Kimble v. White.

AARON R. KIMBLE, executor of the last will of MARY A. MIDDLETON, deceased,

v.

JOHN ELDRIDGE WHITE, THE TRUSTEES OF THE BROAD STREET METHODIST EPISCOPAL CHURCH et al.

1. Where a bequest is first made in terms which plainly vest an immediate estate, the subsequent addition of equivocal expressions having a contrary tendency, will not be accepted as indicative of a contrary intention.

2. M. bequeathed the residue of her estate, consisting of money, by the following language: "Third. I give and devise to Daniel M. White son of John E. and Lizzie R. White, the residue of my estate, a sufficient amount to be used to educate him before he comes to the age of twenty-one years, if he does not live to heir it, then to go to the trustees of the Methodist Church, the interest to be used in keeping up the fences and walls of the grave-yard." Daniel M. White survived the testatrix, but died before he reached majority. *Held*, that at the death of the testatrix he took a vested, indefeasible estate in the legacy, which, at his death, passed to his personal representative.

On bill, answers and proofs.

*Mr Howard Flanders*, for the complainant.

*Mr. Mark R. Sooy*, for John Eldridge White.

*Mr. Barker Gummere*, for the Trustees of the Broad Street Methodist Episcopal Church.

Kimble v. White.

THE CHANCELLOR.

Mary A. Middleton, of the city of Burlington, made her last will on the 28th of December, 1887, in and by which, after directing the payment of her debts and funeral expenses and the cost of the erection of a tombstone to her memory, and bequeathing $500 to John Eldridge White, who was the husband of her niece, she provided in the following language:

" *Third.* I give and devise to Daniel M. White son of John E. and Lizzie R. White, the residue of my estate, a sufficient amount to be used to educate him before he comes to the age of twenty-one years, if he does not live to heir it, then to go to the trustees of the Methodist Church, the interest to be used in keeping up the fences and walls of the grave-yard."

Then, by the will, she gave to "Trustees of the Broad Street M. E. Church" its indebtedness to her, provided it should agree to keep her burial plot in order; and, to the poor, her wearing apparel, providing that her executor should select "two sisters of the church to distribute them as they may deem best," and appointed the complainant the executor of her will.

She died on the 11th of February, 1889, and the complainant thereafter duly proved the will and took upon himself its execution.

Daniel M. White, named in the third paragraph of the will, survived the testatrix, but died in September, 1890, before he became twenty-one years of age, without leaving children or brothers or sisters. His father is his next of kin.

In April, 1890, the complainant, as executor, accounted, exhibiting the residuary estate to be $7,000 in money.

There are two Methodist Episcopal Churches in the city of Burlington, both of which are incorporated; one by the name, "Trustees of the Broad Street Methodist Episcopal Church," and the other by the name, "Union Methodist Episcopal Church."

The testatrix was connected all her life with the former of these churches, her mother having been a member of it. She died, unmarried, at the age of forty-seven years. She had for many years been active in the work of the Broad Street Church. Her burial plot was in the graveyard of that church. She was

not connected in any way with the Union Methodist Episcopal Church..

. The executor now seeks direction as to whom he shall pay the residuary estate.

On behalf of the defendant John E. White it is claimed that Daniel M. White, having survived the testatrix, took a vested, indefeasible estate in the residue bequeathed by the third paragraph of the will, which, by law, passes to his father as his next of kin. It is, on the other hand, contended in behalf of the Trustees of the Broad Street Methodist Episcopal Church that Daniel took an estate contingent upon his reaching the age of twenty-one years, and that, as he did not reach that age, his estate was divested, and the residuary property bequeathed to him, in virtue of the terms of the will, passed to the Broad Street Church.

The Union Methodist Episcopal Church is a defendant in this suit, but has failed to answer. It makes no claim to the property.

It is observable from this statement that it is necessary to first determine the time at which the death of Daniel, contemplated in the words "if he does not live to heir it," shall happen. Is that time at the death of the testatrix or at Daniel's arrival at majority? If it is at Daniel's majority, then, as he did not reach the age of twenty-one years, the further question, what beneficiary the testatrix intended by the words "Trustees of the Methodist Church," arises. If it is at the death of the testatrix, then Daniel took an indefeasible estate, and it is unnecessary to answer the latter question.

It is noted that the testatrix first gives her residuary estate to Daniel without condition: "I give * * * Daniel M. White * * * the residue of my estate."

This she follows with a parenthetical clause: "A sufficient amount to be used to educate him before he comes to the age of twenty-one years." Then she imposes a condition, upon the happening of which the bequest is to go to another, "if he does not live to heir it," obviously meaning, if he does not live to take the bequest she offers.

Eliminate the parenthetical clause, and the bequest is this : " I give to Daniel my residuary estate if he lives to take the bequest." Such a bequest vests in the legatee if he survives the testatrix, for her will goes into effect at her death, and right to that which it gives absolutely vests then.

Now consider the bequest as it is affected by the parenthetical clause. Is there a change ? That clause assumes that before Daniel reaches the age of twenty-one years, he will not have the beneficial use of the legacy, and provides for the expenditure of a portion of the moneys given to him, within that time, for his benefit. It assumes that which the law contemplates and requires—that the property of the infant legatee will be hus-banded and accumulated for him until he shall reach his majority, his father, in the meanwhile, being charged with his maintenance and education. And it serves the double purpose, of relieving the father from a burden and ensuring to the son the benefit of an early education. It emphasizes and directs an application of the money which, in its absence, might not be made. It expressly commands that the education is to be had " before " majority is reached.

I do not perceive in this clause an exhibition of testamentary purpose to extend the contingency, upon which Daniel is to take, beyond the death of the testatrix. It appears to me that the whole office of the clause is to ensure a beneficial enjoyment to the legatee before the time when the law would let him into pos- session. Its entire reference is to possession.

It is a generally accepted rule in construction of wills that the courts will lean towards the vesting of bequests, and espe- cially residuary bequests, and that postponement of the vesting will not be taken to be intended, unless such intention clearly appears. Where the bequest is first made in terms which plainly vest an immediate estate, the subsequent addition of equivocal expressions having a contrary tendency, will not be accepted as indicative of a contrary intention. Mr. Jarman (*2 Jarm. Wills* (*R. & T. ed.*) *470*) illustrates the application of this rule by the citation of two cases, as follows :   " Thus, where (*Dodson* v. *Hay, 3 Bail. Ct. Cas. 404*) A, by his will, gave unto the

children of his sister the whole of his real and personal estate (subject to certain legacies), and, afterwards, expressed his desire that the children should be educated with the yearly interest of whatever portion of his estate might fall to each child's lot or share, *and such portion not to be otherwise claimed or inherited, directly or indirectly, until the children arrived at the age of twenty-two years, whether married or single*—Sir R. P. Arden, M. R., held, that the subsequent vague words were not sufficient to control the prior clear words; but the meaning was, that the legacy should be absolute, and that the legatees should not have the command of the principal till the age of twenty-one; and he laid some stress on the fact of the interest being given for maintenance."

"So, where (*Montgomerie* v. *Woodley, 5 Ves. 522*) a testator, after disposing of his real and personal estate in strict settlement, added that none of the devisees should take or come into possession before the age of twenty-five, this was held to refer to the actual possession only, and not to postpone the vesting."

In the court of appeals of New York, the rule laid down in *Thornhill* v. *Hall, 2 Cl. & F. 22*, that in the construction of written instruments where one estate is given in one part of the instrument in clear and decisive terms, such estate cannot be taken away or cut down by raising a doubt upon the extent, meaning or application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that estate, is approved and adopted. *Roseboom* v. *Roseboom, 81 N. Y. 356; Freeman* v. *Coit, 96 N. Y. 63.*

My conclusion upon this point is, that the estate of Daniel M. White vested in him, absolutely and indefeasibly, upon the death of the testatrix, and that at his death it passed to his personal representatives. This conclusion renders it unnecessary for me to determine the second question suggested at the argument.

The executor will be directed in accordance with this conclusion.