LENA M. SALING, complainant,

v.

JOHN W. SALING et al., defendants.

[Submitted March 6th, 1924. Decided March 18th, 1924.]

1. Where lands were regularly sold under the Martin act, the only affect of a bargain and sale deed from the former owner, given after the sale, is to convey to the grantee therein his right to redeem the premises under the tax sale.

2. Where the owner of the tax title constructed greenhouses on the lands covered by his tax deed, resting on posts stuck into the earth, such buildings were fixtures and went with the freehold.

3. Where a mortgage was made on lands to a stranger who assigned it to the wife of the owner of the lands, such mortgage passed to the husband on the death of his wife intestate, and was merged in his fee-simple title.

4. A mortgage upon the lands of a testator should be paid out of his personal estate, and the lands devised exonerated thereby.

On bill, &c.

*Messrs. Hyer & Armstrong,* for the complainant.

*Mr. Orlando H. Dey,* for the defendants.

BENTLEY, V. C.

This is a bill for partition, with an answer and counter-claim.

The complainant is a sister of the defendant, and the remaining defendant, being the latter's wife, is a mere, formal party, and no account of her will be taken in the language of this opinion.

In or about 1912, Magdalene R. Saling, the mother of the parties to this suit, died seized of three tracts of lands, designated in the pleadings as tracts A, B and C. She died intestate and, in consequence, the parcels of real estate mentioned descended to the parties as tenants in common. As to this there is no dispute, and it is admitted that as to them there should be a partititon, and that a sale will be necessary to effect the same. The main question relates to the title of a fourth parcel of land claimed by each of the parties.

On the 25th day of February, 1891, one Eldridge executed a bargain and sale deed to the mother, Magdalene, for the purpose of conveying the premises in dispute. On the 8th day of October, 1890, however, the premises had been sold by the city of Rahway for delinquent taxes under the Martin act (*4 Comp. Stat. p. 5205*) to William Saling, the father of the parties and husband of Magdalene, who perfected the sale and received a deed therefor from the city treasurer on the 6th day of October, 1891. In 1921 William Saling, the father, died leaving a last will and testament, in which,

among other things, he devised the premises in dispute to the defendant. Thus, the situation is presented of the complainant claiming title to an undivided one-half by descent from her mother, while the defendant maintains that he is entitled to the parcel in severalty by purchase. The proofs disclose that the title was regularly acquired by the father under the provisions of the Martin act, and, therefore, I am at a loss to see how I can give any effect to the deed from Eldridge to the mother except as she took his right to redeem the premises from the tax sale which, of course, was effectually cut off by her failure to avail herself of this opportunity in the manner provided by the statute. I fail to see how any effect is to be given to complainant's argument that the father's title is defective because a husband cannot secure a valid tax title in his wife's real estate, because, under my finding, this never was the property of his wife. It is true that she secured from Eldridge the right he formerly had to redeem, but of this she never made any use, and, therefore, under the statute her interest was extinguished. When Eldridge undertook to convey, by his deed of February 25th, 1891, to the mother, the sale had already been held, and when the notices to redeem were served and published there was nothing of record to put the father on notice. Section 6 of the act of 1889 (*P. L. 1889 p. 311*), one of the supplements to the Martin act, provides for cutting off the estate or interest of all persons with unrecorded deeds, mortgages, &c., and the seventh section thereof is to the same effect as to "any person or persons claiming * * * through or under the person or persons so served" where the claimant's predecessor has been served, as was the case in this instance, because the affidavit of Christopher D. Marsh, admitted in evidence pursuant to section 6 of the supplement to the Martin act, found in *P. L. 1892 p. 430,* discloses that on March 9th, 1891, notice to redeem, in conformity with the act, was mailed to the said Eldridge as well as published in a newspaper. So that the estate or interest of the mother was in two ways extinguished by the statute—*first,* because notice to redeem was served upon her predecessor in title,

and *secondly,* because her deed had not been recorded. There is no proof that her husband had any actual knowledge of her deed or assignment of mortgage.

In her bill the complainant prayed the judgment of this court on the question of title, and the defendant in his answer raised the question of jurisdiction as to the legal title of the premises in question. On the hearing the attitude of the parties was reversed, the defendant submitting himself to the jurisdiction while the complainant sought to avail herself of the objection contained in her adversary's answer. On the question of practice so presented, I see no occasion to make any ruling, for the reason that on the merits of the question of jurisdiction I am convinced that a relegation of the parties to a court of law is unnecessary. It is undoubtedly the general rule that where the complainant's legal title is disputed by the defendant, a court of equity will not try the question but retain the cause until the issue shall have been tried at law. *Pom. Eq. Jur.* § *1388.* To this rule, however, there are a number of well-established exceptions. The authority on this question is the opinion of the court of errors and appeals in *Hart* v. *Leonard, 42 N. J. Eq. 416,* where it is laid down that this is an appropriate tribunal in which to enforce a legal right where, though formally disputed, it is clear on facts which are not denied and legal rules which are well settled, and where the object of the bill is to ascertain the extent of the right and enforce or protect it in a manner not attainable by legal procedure. In the present case, the bill is properly filed under the undoubted jurisdiction of equity in suits for partition, and because of the other equitable doctrines raised by the pleadings. It will be observed from what has been said of the devolution of title that the facts are all of record. The question that would be presented to the law court would be exclusively one of law, and no jury question would be presented for determination.

During his lifetime, William Saling, the father, constructed upon the premises mentioned in the bill several greenhouses used in his business, which was that of a florist. These were constructed, in the usual manner, of frames con-

taining glass, a walk running through the length of each greenhouse, with beds for flowers on each side, and pipes buried thereunder from a central heating system to maintain the necessary temperature in cold weather. The testimony was that these greenhouses rested upon posts sunk into the earth, but from this I gather no more than that the posts were the foundations upon which the various superstructures were reared, and that, consequently, they were by this means annexed to the soil. This makes it evident that they were fixtures and went with the freehold, especially in view of the fact that some of them had been in existence for a period of about forty years prior to the death of William. It seems to me that these facts bring the case within the decisions in *Spciden* v. *Parker, 46 N. J. Eq. 292; Feder* v. *Van Winkle, 53 N. J. Eq. 370; Knickerbocker Trust Co.* v. *Penn Cordage Co., 66 N. J. Eq. 305; Chancellor* v. *Cruse, 83 N. J. Eq. 232.*

In his counter-claim the defendant describes two mortgage charged upon the particular parcel of property under consideration, and asks for a decree of cancellation of the one prior in point of time. On July 26th, 1880, the said Eldridge and his wife joined in a mortgage to one Charles Storrs to secure the payment of $2,000. This mortgage ran for the unusually short period of six months. On February 23d, 1891, Sarah Storrs Proctor Howe, as sole surviving executor of the estate of Charles Storrs, the mortgagee, assigned this lien to the mother of the parties, Magdalene R. Saling, just two days prior to the conveyance to her of the fee by the said Eldridge. This is the mortgage the cancellation of which is sought. When the assignee, Magdalene, died, in or about the year 1912, intestate, this mortgage, as part of her personal property, passed to, and became the property of, her husband under the law as it then existed. *3 Comp. Stat. p. 3877.* In this posture of affairs, and on April 4th, 1913, the father, William Saling, executed another mortgage on the same land to one August Begerow, in the sum of 1,000, and containing the following language: "Being the same lands conveyed to William Saling by deed of H. S. Langstaff, city treasurer of the city of Rahway,

dated October 6th, 1891." As I have said, the defendant seeks a decree relieving this land from the lien of the Storrs' mortgage, arguing from (a) the common law presumption of payment after twenty years; (b) the statute of limitations; (c) the foreclosure effected by William Saling's tax title, and (d) the doctrine of merger. As to the validity of the first three reasons for cancellation, I feel such hesitation as causes me to disregard them, and rather place the decision of this prayer under the last-mentioned head. The fact of coverture between the persons through whom the parties, respectively, claim, unquestionably complicates the situation. A serious question is presented whenever a tax title is relied upon by a husband in property of his wife, and, for the reason I have indicated, it is unnecessary for me to enter upon an examination of it in this case. The first and second reasons advanced by the defendant for this relief is also thrown into confusion by the conflicting opinions in Swinley v. Force, 78 N. J. Eq. 52, and Metlar v. Williams, 86 N. J. Eq. 330. In a suit such as the one at bar, where it is unnecessary to consider the application of this rule of the common law or the statute, another pronouncement by the same court would serve no useful purpose, and might, indeed, but add to the existing uncertainty.

That a merger occurred when the fee and the charge thereon under consideration came into the possession of William Saling, appears to me to admit of no question. In Nagle v. Conrad, 79 N. J. Eq. 124, Vice-Chancellor Howell, it is true, said: "It is a thoroughly well-settled rule that merger is not favored in equity and is never allowed unless for special reasons and to promote the intention of the party, and that where the equities are subserved by keeping the mortgage alive, and no injury or injustice is thereby wrought, it is not extinguished." Citing many authorities. In that branch of the doctrine illustrated by the case at bar, the controlling fact in all instances is the intention of the person in whom the respective interests are united. 2 Pom. Eq. Jur. § 791. That intention, if expressed, is dispositive of the matter, and, if not expressed, is to be sought from the facts and cir-

cumstances surrounding the case, and the question of benefit to the hypothetical person, in this case, William Saling. In other words, "it is presumed that his intention was to keep it alive, because it is manifestly for his benefit." *Idem*. In *Nagle* v. *Conard, supra,* the decision of the vice-chancellor discloses that in the will in that case, the person who held both the interests in the land expressed his intention in the following explicit language: "As it is not my intention that there shall be any merger of said mortgage by reason of my holding an estate in remainder in said property."

It was also pointed out that there was an intervening estate, as the foregoing language indicates, which would also, in itself, have defeated a merger. In the case at bar, the facts come directly within the exception to the rule deduced by Vice-Chancellor Howell from the authorities. At the time William Saling acquired the mortgage, it had been due for more than thirty years, and, inasmuch as there is no proof of any interest having been paid by him, it is difficult to understand of what value it could have been to have kept it alive. But more important is the fact that when, in the following year, he executed the mortgage to Begerow, no mention was made of it being subordinate to the Storrs' mortgage. He also covenanted with Begerow that after default the latter might peaceably and quietly enter and enjoy the mortgaged premises. It surely cannot be said that no "injury or injustice" would be wrought by this mortgagor having secretly intended that he would keep the mortgagee from satisfying his debt against the premises in case of default, by interposing his thirty-year-old mortgage as a shield. The prior mortgage became merged in the fee; and, therefore, the cloud it casts upon the defendants' title should be removed.

The next question presented for consideration refers to the second mortgage described above, made by the father, William Saling, to Begerow. Saling, by his will, after devising certain lands to the complainant and the lot in dispute to the defendant, bequeathed all his personal property to the complainant. In consequence, the defendant demands that,

out of the personalty of his father's estate, the complainant discharge the land so devised by the elder Saling to him of the lien, encumbrance and charge of the Begerow mortgage. The recent opinion of the court of errors and appeals in the case of *Hill* v. *Hill, 1 N. J. Adv. R. 1371; 95 N. J. Eq. 233;* affirming the decision of Vice-Chancellor Lewis in *93 N. J. Eq. 567,* while concerned principally with the scope of the provisions of chapter 170 (*P. L. 1880*) refers to the principles that are controlling, and the exonerations prayed by the defendant in the counter-claim will be decreed. It appears that the bond, to secure which William Saling executed the mortgage to Begerow, was signed by the defendant as well as his father, from which, it is argued that the right of exoneration does not exist, because the debt was as much the defendants's as his father's. There was nothing in the proofs that I can remember upon which I can so find. Rather, is there every indication that the defendant was an accommodation obligor. It is, of course, a common practice for one about to make a loan to insist upon some person joining with the borrower as surety for the repayment thereof.

Further objection was made to the prayer for exoneration, upon the ground that the complainant sues in her own right and not in her representative capacity. She is the executrix under her father's will, however, and the prayer for this relief in the counter-claim is unquestionably directed against her in this connection. Any amendment necessary, of course, would be allowed for the asking.

It is conceded by both parties that there should be an accounting.

I will advise an order in accordance with the foregoing.