This is a bill for partition in which the question for decision requires a construction of the will of George Hayday, Sr., deceased, the first question being the character of the estate devised to his son William Hayday under the provisions of item 8 of the will, which reads as follows:
"Item — I give, bequeath and devise the house and lot on Atlantic Avenue said Atlantic City twenty-six feet in width and eighty feet in depth southeastwardly also the use of the adjoining lot on the southwesterly side being about twenty feet wide on Atlantic Ave. and extending of that width about sixty feet southeastwardly to an open yard to my son William Hayday to be used and enjoyed by him during the term of his natural life, and from and immediately after his death I give, bequeath and devise the same to grandchildren in equal shares and in case of any said grandchildren dying before me her his or their shares shall be divided equally among their lawful issue per stirpe."
Horace Hayday, the son of the William Hayday mentioned as devisee in item 8 aforesaid, contends that under the devise therein created his father took the house and lot first mentioned (1702 Atlantic avenue) in fee-simple, and in the "adjoining" lot (1704 Atlantic avenue) a life estate.
It is further contended that the devise over of lot 1704 Atlantic avenue to "grandchildren" was intended to include only the children of William Hayday and not the children of William's brother and sister.
As to the jurisdiction of this court, defendant Horace Hayday says that the court, in determining the question whether the devise in question is one in fee or for life is purely legal, in which the legal title to the property must be determined, and while counsel says "we do not challenge the court's right to determine the legal question of title if it concludes so to do, we insist, however, that the question for determination, even though it depend upon the construction of the Hayday will, is a legal question."
Hart v. Leonard, 42 N.J. Eq. 416, points out the several instances in which this court may protect and enforce legal rights by injunction, inter alia, "cases where the legal right, *Page 87 
though formally disputed, is yet clear, on facts which are not denied and legal rules which are well settled," and our courts have, in many cases, decided the legal questions of title which have been raised in partition and other cases where wills have been construed in order to arrive at such determination. Scott
v. Scott, 112 N.J. Eq. 195; Snyder v. Taylor, 88 N.J. Eq. 513;In re Ungaro, Ibid. 25; Saling v. Saling, 95 N.J. Eq. 611 (atp. 614); Peer v. Jenkins (Court of Errors and Appeals),102 N.J. Eq. 235; Klotz v. Klotz, 122 N.J. Eq. 31.
Testator, George Hayday, Sr., died May 31st, 1895. Three children survived, Matilda Wiley Foley, George Hayday, Jr., and William Hayday. There were five grandchildren, Matilda Wiley Myers and John Wiley, children of Matilda Wiley Foley, Florence Hayday Brooks and Lulu Hayday Smith, children of George Hayday, Jr., and Horace R. Hayday, son of William Hayday. Horace was the youngest grandchild, born October 10th, 1889.
The testimony offered at the final hearing, in so far as it relates to the circumstances existing at the time of the making of the will, and the conditions existing at the time of testator's death, are admissible as an aid to the court in determining the intention of the testator. To some extent, at least, it puts the court in the position of the testator at the time he executed his will and from then on until the date of his death.
An early case supporting this proposition of law is AttorneyGeneral v. Moore's Executors, 19 N.J. Eq. 503. This case has been frequently cited with approval, the most recent citation being by the court of errors and appeals in Noice v. Schnell,101 N.J. Eq. 252, wherein the court (at p. 272), said:
"For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances *Page 88 
of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will."
The will itself is undated and there is no evidence conclusively fixing the date of its execution. Testator died on May 31st, 1895, at which time Horace Hayday, his grandchild through testator's son William, was approximately five years and eight months of age, so that prior to testator's death there were living as objects of his bounty three children and five grandchildren. Testator was the owner of nine pieces of real estate, of which all but one were situate in Atlantic City. His personal property was sufficient to pay money bequests of $2,500 and leave a balance over costs of administration of $15,000.
During the lifetime of testator, William Hayday and his family were residing at 1702 Atlantic avenue. The granddaughter, Matilda Wiley, was living at 8 Illinois avenue with her grandfather, the testator, and had lived there since the death of her grandmother in February of 1886.
Leaving for the moment this subject and going to the will, we find that the first four items were money bequests to grandchildren, each in the sum of $500, with the exception of Matilda, the granddaughter, to whom testator gave $1,000.
Without exact proof of the date of the execution of the will, the court is unable to ascertain whether Horace Hayday, the son of William, had been born at the time of the execution of the will, probably not.
Item 6 is a devise to testator's daughter, Matilda Foley, and her two children, Matilda and John Wiley, "as joint tenants and not as tenants in common," a property situate at 1706 and 1708 Atlantic avenue in Atlantic City "and likewise" 312 and 314 Gaskill street, Philadelphia.
Item 7 devises to testator's son George Hayday, Jr., property at 1700 Atlantic avenue, Atlantic City, "as also" 10 Illinois avenue, Atlantic City, "the whole of this devise to him my said son George Hayday, Junior, his heirs and assigns forever." *Page 89 
Item 8 is a devise to testator's son William, in the language heretofore quoted.
Item 9 is a devise of 8 Illinois avenue to testator's granddaughter, Matilda Wiley, "her heirs and assigns forever."
The evidence discloses no reason why testator should have preferred one of his children over the other, and with the possible exception of Matilda, no reason why he should have preferred any particular grandchild. However, it is apparent that the will does prefer Matilda over the other grandchildren, both as to money bequests and devises of real estate, and also shows that as to money bequests, testator's grandchild Horace was ignored, and unless the court construes the eighth clause of the will as contended for by Horace, testator has certainly preferred his son George and daughter Matilda over his son William, both in respect to the devise directly to William and again as to the grandchild Horace.
Of course, testator had a right to dispose of his worldly effects as he saw fit, and the fact that he may have provided more liberally for one than the other does not in any way assist in a proper construction of the eighth clause of the will. That clause must be construed to carry out testator's intention as disclosed by its context and in accord with the settled rules of construction, though by so doing William and his son Horace may receive a less estate than they contend for.
In Brearley v. Brearley, 9 N.J. Eq. 21, the court said:
"That, where the intention of the testator violates no principle of law or morality, it is the only guide in giving effect to a will, notwithstanding it may be unreasonable; and, where the intention is clear, the situation of the testator, or of his family, or property, will not be taken into consideration; but where, taking the whole will together, the intention is not clear, such a construction will be adopted as will relieve against a hardship, and lead to a just and proper result."
In order to interpret the will to relieve against the apparent discrimination against the son William, rules of construction hereinafter referred to would have to be ignored, and that in the face of the fact that it may not be said that a survey of the whole will makes it appear that testator intended to give a fee in 1702 and a life estate in 1704 to his son William. *Page 90 
As said in Marshall's Executors v. Hadley, 50 N.J. Eq. 547
(at p. 553):
"There can be no doubt that it is within the power of the courts, in construing a will, to depart from its strict words when that course is necessary in order to give effect to the intention of the testator, * * * and there are other instances in which the strict meaning of a word or phrase has not been followed, but such departures are never made except that it ismanifest that in no other way can effect be given to what clearlyappears, on a full view of the whole will, to have been theintention of the testator."
Taking up first the estates created by testator in items 6, 7 and 9, we find that in the sixth clause he or his scrivener used appropriate words to create a joint tenancy and that in items 7 and 9 he clearly made the devise by appropriate language in fee-simple.
From the above it is quite apparent that testator or his scrivener were versed in the use of words necessary to create a joint tenancy and an estate in fee-simple, and in dealing with the double devises in items 6 and 7 he knew how to conjoin the devises, the one with the other, for clarity.
In item 6 testator devised to Matilda, his daughter, 1706 and 1708 Atlantic avenue, "and likewise" 312 and 314 Gaskill street, Philadelphia.
In item 7 testator devised to his son George 1700 Atlantic avenue, "as also" 10 Illinois avenue.
In the use of the words "and likewise" in item 6, as well as the words "as also" in item 7, there may be no doubt that testator used the words as signifying "in like manner," i.e., in item 6 the devise in the first instance was as joint tenants as to the Atlantic avenue property, and the Philadelphia property was "and likewise," i.e., in the same manner.
In item 7 the devise of 1700 Atlantic avenue was to the son George, "as also" or in like manner was the devise of 10 Illinois avenue to George, followed by "the whole of this devise" to George, his heirs and assigns forever. And the rule is that words used more than once in a will are presumed *Page 91 
to be used in the same sense, unless a contrary intention appears. Traverso v. Traverso, 99 N.J. Eq. 514; affirmed,101 N.J. Eq. 308.
Now then, in item 8 testator made two devises to his son William, without using any words of inheritance, and yet he deemed it necessary, when he attempted to create a fee for George, to use the words "his heirs and assigns forever," and likewise in item 9 in the devise to his granddaughter Matilda he used the words "her heirs and assigns forever."
It is a rule of construction appropriate to wills that: "in construing wills, because strongly indicative of, and subservient to, the testator's intention, that when he has in one part of the will shown his knowledge of the technical form used in drawing a devise or bequest with a view to accomplish a precise and definite object by using and adopting it, and again in another devise or bequest in favour of the same person, uses words, that without the first being employed in the same will, would not be held to be of the same import; or even uses words in the second case of doubtful import, such as might or might not have been intended to mean the same thing with the technical form of words used in the first devise or bequest, the design and intention ofthe testator must be considered different in the second case fromwhat it was in the first, and the effect will not be the same inboth cases; because it cannot be supposed that a man of the least sense, would use terms of dubious import, to express the same purpose, after showing that he was acquainted with the technical language used for declaring it with positive and absolute certainty." Evans v. Knorr, 4 Rawle's Reports 66 (atp. 72).
It would seem, therefore, that under the above rule testator intended to create an estate other than in fee when in item 7 he not only failed to designate William's heirs and assigns, but spoke only of a life estate.
But it is argued that words of inheritance were not necessary to create a fee in the devise of 1702 Atlantic avenue (house and lot) under section 36 of the Wills act. 4 Comp. Stat. p. 5873.
That section provides that: *Page 92 
"all devises, * * * in which the words, heirs and assigns, or, heirs and assigns forever, are omitted, and no expressions are contained in such will and testament, whereby it shall appear that such devise was intended to convey only an estate for life,and no further devise thereof being made of the devised premises, after the decease of the devisee, to whom the same shall be given," shall be in fee-simple.
But in Morris v. Le Bel, 71 N.J. Eq. 43, the court said that:
"The legislative intent was to compel the construction of devises which omitted the words `heirs and assigns' as passing an estate in fee except in two cases — first, where the will contained expressions from which it appeared that the devise was intended only to convey an estate for life; and second, when testator made no further devise after the death of the first devisee. Although the act connects the description of these two classes of cases by the conjunction `and,' the plain intent requires `and' to be read as `or,' and the statutory construction cannot be made if either case appears."
Under this statute the use of the words "heirs and assigns" is not necessary to create an estate in fee-simple, excepting where either exception to the statute appears, but even so, the rule of construction hereto adverted to is appropriate in determining the intention of the testator as to the estate he wished to create in the devise to his son William, and if on a construction thereof it appears that the testator intended to convey an estate for life and that he did make a devise over to other than the life tenant, the statute does not defeat that intent.
In order to determine whether testator intended only to convey a life estate or whether there was a devise over as to 1702 Atlantic avenue (house and lot), it becomes necessary to determine the significance to be given to the word "also" as used by testator in reference to the devise of 1704 Atlantic avenue (adjoining lot) and in so doing to apply the rule that testator is presumed to have used the word in its primary and ordinary significance.
It is argued that had testator intended to limit the first devise (1702 Atlantic avenue) that he would have said — I *Page 93 
devise the use of 1702 Atlantic avenue, also 1704 Atlantic avenue — and that he failed so to do demonstrates that he intended to create a different estate in 1702 than in 1704.
This argument stands or falls on the significance given to the word "also." If it means "in addition to" as used by testator, the contention would appear sound, but if it signifies "in a similar manner," unsound.
First, as above noted, when testator used the word "likewise" in the sixth item, he meant "in like manner," and in item 7 when he used the word "also" the second devise was of the same estate as that previously devised, to wit, fee-simple. But he clarified any necessity of defining "also" by saying "the whole of this devise" in fee-simple.
However, "likewise" is synonymous with "also" and it may be assumed that both words were used by testator as such.
Funk Wagnall's New Standard Dictionary, 1938 edition, defines "also" as follows:
"also — adverb and conjunction, (1) as something further tending in the same direction; besides; as well; in addition; as — (2) in the same way; likewise. Syn. — as well, as well as, besides, in addition, in like manner, likewise, similarly, too, withal. While some distinction between these words and phrases will appear to the careful student, yet in practice the choice between them is largely to serve euphony and avoid repetition. The words fall into two groups; — as well as, besides, in addition, too, withal, simply add a fact or thought; also (all so), in like manner, likewise, similarly, affirm that what is added is like that to which it is added."
If "also" signifies or affirms that the addition of the devise of 1704 was to be a devise like that of 1702, to which the 1704 devise is added, then it is quite apparent that testator intended only a life estate in both properties, in view of the Wills act provision aforesaid.
This court, in Van Houten v. Post, 39 N.J. Eq. 51, had the following clause to deal with:
"I give and bequeath to my dear, beloved wife, Rachel, about nine acres that is by south of Edo P. Mercellus's land, called the new lane, and also all my movable personal property to be left to discharge my debts, and so much of my real property to discharge the remainder of my debts, if any wanting, *Page 94 
and the remainder of my property of what nature soever, during her widowhood. I give and bequeath to my daughter Caty the one equal fifth part of the remainder, and the rest to my two sons John and George, equal, share and share alike."
The court held that the widow took the fee in the nine acres.
The court did not define the words "and also" but it will be observed that there is a distinction between the clause there under consideration and that in the instant case. There the first devise of the nine acres was complete in itself and there was no necessity for looking to the succeeding provisions of that clause to determine the estate devised, the name of the devisee or, in fact, any other matter, but herein the devise of 1702 is incomplete in that no devise is named and the succeeding provisions of the clause are necessary to supply this defect. This difference will be more fully discussed hereafter.
In Morgan's Ex'r v. Morgan's Trustee, 41 N.J. Eq. 235, the court dealt with this clause:
"Second, I give, devise and bequeath unto my beloved wife, Caroline Morgan, all of my household goods and furniture, also one-third of the income or interest of my estate during her widowhood, in lieu of dower."
The court said the widow took only an interest in the goods and chattels, c., during widowhood, and Vice-Chancellor Bird defined the word "also" as "in like manner" and cited English cases to support his conclusion, as follows:
"He gives the goods, and also the interest of his estate, and adds, `during her widowhood.' The word `also' signifies the same as `in like manner.' And this view seems to be sustained by the authorities. In 8 Vin. Abr. 214, Q. Q., it is declared: `If a man devise black acre to one, in tail, and also white acre, the devisees shall have an estate in tail in white acre also, for this is all one sentence, and so the words which make the limitation of the estate go to both.' In Fenny v. Ewestace, 4Maule Sel. 58, it appears the testator said: `I give unto my nephew, Collyer, all that my home and premises *Page 95 
at Pittston, in the occupation of R. Reed; I also give unto my nephew, John Collyer, all that my land in the parishes of Riddlestone and Aubury, in the occupation of J. Tomkins, to my said nephew, John Collyer, his heirs, assigns forever.' The devisee took a fee in both. The words expressing a quantity of estate were reserved till the last. In this case the punctuation is much more serviceable, the two members of the sentence making the devises being separated by a semi-colon. This view is sustained in the case of Giles v. Melsom, L.R. (6 H. of L.)24. `The proviso being at the end of all the devises must have a meaning applicable to all, and not be treated as if placed at the end of one, and thus made applicable to one only.' See, also,2 Jar. on Wills 75; Child v. Elsworth, 2 DeG., M. G. 679.Richards v. Baker, 2 Atk. 321, fully sustains this view.Leeke v. Bennett, 1 Atk. 470."
Thus it will be seen in the above cited cases that where two devises are made in one sentence, connected by the word "also" or "and also," that the words of limitation on the estate granted go to both devises.
The reporter in the Morgan Case, at the foot of page 235, cites numerous authorities so holding.
If the Morgan Case is controlling, and it has never been reversed or disapproved, testator in the instant case, having devised 1702 and 1704 in one sentence, and limited the estate to life at the conclusion of the two devises, that limitation must be applied to the devise of both 1702 and 1704.
1 Page on Wills 1405 § 823, says:
"Where the several devises are connected by the word `also,' and one of such gifts clearly shows what duration of estate is intended and the rest are ambiguous, it was held that the ambiguous devises are to be considered as of the duration of the devise, which is stated in clear and unmistakable terms. This holds good even where the devises were in such general terms as to pass the fee or absolute ownership if standing alone; and they may thus be cut down to a life interest."
The above author cites, in support of the above proposition,Rusk v. Zuck, 147 Ind. 368; 45 N.E. Rep. 691;46 N.E. Rep. 674; as well as Eberhardt v. Perolin, 49 N.J. Eq. 570. *Page 96 
An interesting and instructive case is Evans v. Knorr,supra, in which the supreme court of Pennsylvania went carefully into the significance to be given to the word "also" as used in wills. In that case the clause in which the word "also" was used was "separate and distinct" from the preceding clause and the court held that the word "also" as used in the will there under consideration imported no more than "item" and that it could not be construed to mean "in like manner," but the court also pointed out that a different result would have followed in a case where one clause of the will was imperfect and hence depended on another to make the imperfect clause complete. It said, at the top of page 70: "that it is only where the first sentence is complete, and the second so imperfect, or vice versa, as not to be intelligible without referring to the first or the one that is perfect, in order to supply the defect, that the word `also,' can ever have the meaning of the words, `in like manner,' given to it, or in causing the one clause to govern and direct the other."
The court follows this statement by citation of authority, which in part is as follows:
"As in 1 Roll. Abr. 844 tit. Estate by Devise (M.), pl.2. `If a man devise Blackacre to one in tail, and also Whiteacre; the devisee shall have an estate tail in Whiteacre; for the whole is but one sentence, and so the words which make the limitation of the estate belong to both.' Trin. 40 Eliz.B.R. cited by Fenner, Just. to have been decided in bank. So inCole v. Rawlinson, Holt 744; S.C. Ld. Raym. 831, and 1 Salk.234, decided in B.R. 1 Anne, where the testator `gave all his estate, right, title, and interest, which he then had and all the term and terms of years which he then had or might have in his power to dispose of after his death, in whatever he held by lease from Sir John Freeman, and also, the house called the Bell tavern to John Billingsley.' It was ruled by the three puisne justices;contra, Holt, C.J., that the devisee took a fee in the Bell tavern, `because, as they say, it is but one sentence, coupled by the words "and also," and governed by one verb, whereby the preposition in, is carried unto the *Page 97 
Bell tavern, so that it is a devise of all the testator's leasehold estate, and also in the Bell tavern.' See 1 Salk.234, and 2 Ld. Raym. 832. In both these cases, the first clause, it will be observed, is perfect, but the second being altogether imperfect, rendered a reference of it to the first necessary, and becoming thus connected with it, they both make a whole sentence and as such were construed. Again in Moore, 52 53pl. 153, as early as Pasch. 5 Eliz. This case is put by Dyer, Chief-Justice, in the following form: `Item. I give the manor of D. Item. I give the manor of S. to I.K. and his heirs.' Here, it will be observed, that the first clause is the imperfect one, and to render it intelligible, a reference must necessarily be had to the second, which makes it complete. The first is defective in not giving the name of the devisee, and the word, `Item,' is used as a copulative to connect it with the second clause, which gives the name of the devisee, and the quantity of estate intended for him, thus making the whole but one devise, and giving to the devisee a fee-simple in both manors, as he said."
The first clause in the instant case is defective in that it fails to name the devisee of 1702. Thus the imperfection in the first clause renders a reference to the second necessary to ascertain the name of the devisee, and this relationship and dependence being established between the two clauses by a reading of the entire clause, they are to be considered and construed as the component parts of one complete sentence, mutuality aiding and giving light to each other, so that not only the name of the devisee is supplied by the first clause, but the character of the estate devised.
But it is contended that the cases cited in support of this contention were decided in the reign of Queen Elizabeth and that they have not been followed in all subsequent English cases as inSprit v. Bence, Cro. Car. 368, 79 English Reprint 921; Doe onthe Demise of Wickham v. Turner, 2 Dowling Ryland's Report388, King's Bench 1823; Childs v. Wright, 8 T.R. 64; 101English Reprint 1268.
Even so, the case of Morgan v. Morgan, supra, stands as *Page 98 
the unreversed law of the state and the case of Van Houten v.Post, supra, is not violative thereof, for reasons already pointed out.
In the case of Childs v. Wright, supra, the word "also" played a part of no importance. It was held that in a general devise of land, without words of inheritance, the estate is limited to one for life.
In Sprit v. Bence, supra, the case turned on a construction preventing disinheritance of the heir-at-law.
In Doe on the Demise of Wickham v. Turner, supra, the court supplied the word "him" in order to give full effect to that which the court found was testator's intent.
There is no question but that this court could and would disregard any rule of construction which ran contra to the plain intent of the testator, for the reason that these rules are not law and are serviceable only "where the testator's intent is not otherwise discoverable and determinable; and like all such rules, is subject to that cardinal rule that the plain intent of the testator as evinced by the language of his will must prevail." National Newark, c., Co. v. Arthur Sunshine Home,c., 113 N.J. Eq. 313.
But where, as here, the intent to create a fee in 1702 Atlantic avenue and a life estate in 1704 Atlantic avenue is not "plain" by the language used by the testator in the eighth clause of his will, and the intent so to do is not apparent considering the will as a whole, the rules of construction must be resorted to in aid of a determination of testator's intent.
There are many cases reported in which courts of sister states have given a different meaning to the word "also" than this court has adopted. Each case, of course, must depend on its varying circumstances and the context of the particular will under consideration, as where the court seeks to avoid intestacy of all or a portion of testator's estate, or the punctuation and paragraphing of the will point to a meaning, such as "Item," or the manner of the use of the word "also" clearly shows it to have been intended as synonymous with "in addition to," c. *Page 99 
Was the remainder over created by the eighth item intended to be confined to such grandchildren as were William's children or were the other grandchildren to share in that remainder?
The construction contended for by defendant seems to me to be absolutely without merit. There is nothing in the will or the language used therein that would justify a finding on the part of the testator to limit the remainder to the children of William. He used the word grandchildren in its plural sense. He knew that he had more than one grandchild and the context of the will does not show any inclination on the part of the testator to loosely confuse the singular number with the plural number.
Just why it was that the testator did not make a money bequest to his grandchild Horace, and why he allowed the other grandchildren to participate with him in the remainder over created in the eighth item, I do not know. It may well be that at the time of the drawing of the will Horace had not been born, but be that as it may, he had lived for over six years prior to the death of testator and had the testator desired to further recognize the son of William he could have done so and, having failed, this court is not at liberty to equalize the benefits of the grandchildren under the will of their grandfather.
The result is that the devises of 1702 and 1704 Atlantic avenue were for the life of William Hayday, with remainder over to all the grandchildren of testator. *Page 100