This matter comes before the court on a bill seeking the construction of the last will and testament of Max Granitz, who departed this life on September 3d 1941, leaving him surviving as his sole next of kin four brothers and one sister.
The dispute between the parties arises over the construction to be placed upon the second and seventh paragraphs of the will. The second paragraph provides:
"Second: — I bequeath my estate, both real, personal and mixed, wherever it may be located;
No. 1 — Thirty Percent to my Mother-in-law, Mrs. Rose Libby, of Atlantic City, New Jersey.
No. 2 — Thirty Percent to my Sister, Mrs. Regina Rausch, of Brooklyn, New York.
No. 3 — Ten Percent to my Brother, Joseph Granitz, also known as Grant, of Brooklyn, New York.
No. 4 — Ten Percent to my Brother Frank Granitz of New York City, New York.
No. 5 — Five Percent to my Brother, Samuel Granitz, of Atlantic City, New Jersey.
No. 6 — Five Percent to my Brother, Ben Granitz of New York City, New York.
No. 7 — One Hundred Dollars to be paid to each of my six nieces.
No. 8 — One Hundred Dollars to be paid to my nephew.
No. 9 — One Hundred Dollars to be paid to Corine Bernstein."
The seventh paragraph provides:
"Seventh: — I hereby declare my executrix, Mrs. Rose Libby, to receive all monies deposited in the name of Max Granitz deposited in the Boardwalk National Bank of the City of Atlantic City, State of New Jersey, The Philadelphia Savings Fund Society and the Western Savings Bank, both of the City of Philadelphia, State of Pennsylvania. I hereby declare Mrs. Rose Libby to receive all my interests in the Partnership of Carter and Company, located at 1419 Boardwalk, Atlantic City, N.J., the partners being Nathan Kugel and Max Granitz."
Complainants and defendants, except Rose Libby, contend that they are entitled to their respective percentages as bequeathed in the second paragraph of the will out of the entire estate of the decedent, excepting as reduced by paragraph 4, while Rose Libby contends that she, as an individual, is entitled to have absolutely all moneys in the Boardwalk *Page 529 
National Bank, the Philadelphia Savings Fund Society and the Western Savings Bank, as well as decedent's interest in the partnership of Carter Company, as provided in the seventh paragraph of the will, together with the 30% of decedent's estate as set forth in item 1 of paragraph 2 aforesaid.
There is also a contention on the part of Rose Libby that irrespective of the will, she is absolutely entitled to certain United States Treasury bonds, as well as to a certain checking account in the Boardwalk National Bank, but a decision on the question raised by this contention is not necessary to the issue joined herein and nothing said herein shall be construed as affecting the question that may be ultimately raised with respect thereto.
Decedent's estate was appraised as of the time of his death at $40,298.59, as follows:
Corporate stock appraised at ................................. $14,783.00
5 United States Treasury Bonds, Series D — payable on
 death to Rose Libby — redemption value as of time of
 decedent's death ........................................... 3,950.00
Cash in banks:
 Philadelphia Saving Fund Society, Philadelphia,
 Pennsylvania ............................................. 6,316.58
 Western Savings Fund Society, Philadelphia, Pennsylvania ... 4,223.37
 The Boardwalk National Bank of Atlantic City:
 Checking account .............................. $2,701.71
 Savings account .............................. 2,525.06
 _________ 5,226.77
Interest in Carter and Company Partnership — appraised at .... 5,798.87
 __________
 $40,298.59

It will be noticed that in the first six items of the second paragraph of the will testator disposed of 90% of his estate, which he described as "my estate, both real, personal and mixed, wherever it may be located." Testator could not have chosen more appropriate language for the disposition of 90% of his entire estate, no matter of what it consisted. He clearly and distinctly "bequeathed" 90% of "my estate, both real, personal and mixed, wherever it may be located." He then *Page 530 
"bequeathed" $100 each to six nieces, $100 to a nephew and, by the third paragraph of his will he "instructed" that $200 "be paid" to the Montefiore Cemetery, and in the fourth paragraph "directed" that funeral expenses and the payment to the cemetery be "deducted" from his entire estate before division should be made.
It seems quite apparent that the $800 in general legacies to nieces and a nephew was intended to be paid out of the 10% of testator's estate remaining after the division thereof into percentages, as heretofore set forth, and both sides concede that testator died intestate as to the remainder, testator having failed to include a completed residuary clause in his will.
We now come to paragraph 7 and must view its provisions together with what testator had said in the preceding paragraph of the will in order that, if possible, the entire will may stand as a harmonious whole. But first let it be observed that up to the seventh paragraph of the will there may be no doubt as to testator's intention with reference to the disposition of more than 90% of his entire estate. The language used to express that intention is appropriate and would appear on the surface to be that of an intelligent scrivener carrying out the intent of a likewise intelligent testator. The verb "bequeath" has been used as the operative word of the gifts enumerated therein, or words of equally clear import, i.e., in items 7, 8 and 9 of paragraph 2 he used the words "be paid," in the third paragraph he used the words "be paid" and in the fourth paragraph he used the word "deducted." Testator has taken care of his relatives, his mother-in-law and his friend, provided for his burial and that of his mother-in-law, for the payment of his debts and funeral expenses, and to that end he has expressly devoted 90% of his estate, "real, personal and mixed, wherever located," leaving 10% undisposed of, and providing also that his funeral expenses and the $200 payment to the cemetery be paid before a division be made of the 90%. If paragraph 7 were eliminated there could be no doubt that when testator "bequeathed" 90% of his estate to the beneficiaries therein named he meant to *Page 531 
include 90% of his entire estate, including moneys in bank, as well as his interest in the partnership.
In the course of the final hearing defendant Libby introduced evidence intended to show the situation and surroundings of testator and the objects and persons with whom he was familiar and upon whom his affections were resting, which was and is competent to show what testator meant by what he said in his will, but not to show what he meant to say. German PioneerVerein v. Meyer, 70 N.J. Eq. 192; 63 Atl. Rep. 835; Holmes v.American Society, c., Animals, 123 N.J. Eq. 127;196 Atl. Rep. 718. From this testimony it is quite evident that testator was very fond of his mother-in-law, Mrs. Libby; that she was his companion and lived in the apartment which he provided and, in general, looked after his household and welfare. This affection existing between them is amply evidenced, however, by the will itself, in which testator said that on the death of his mother-in-law, Mrs. Libby, "her body shall be placed in crypt No. 1 in my mausoleum next to my body."
Evidence of the scrivener was also admitted from which it appears that that gentleman was a college graduate but not a lawyer, that he had had no experience in drawing wills but that he was possessed of a text book on wills. The will itself was drawn on a printed form, with blanks to be filled in, which were so filled in by typewriter in so far as the bequests therein contained are concerned. The scrivener was also permitted to testify as to what instructions testator had given him for the preparation of the will. This testimony was also admissible to show what testator meant by what he said in the will but was not and could not be received to contradict the language used by testator. Moeckel v. Ludwig, 112 N.J. Eq. 437;164 Atl. Rep. 690; Paul v. Paul, 99 N.J. Eq. 498; 133 Atl. Rep. 868; VonFell v. Spirling, 96 N.J. Eq. 20; 124 Atl. Rep. 518. This testimony of the scrivener was at direct variance with what the court finds testator said in the will and must, therefore, be rejected. Testator was a business man of long standing, fully capable of expressing himself, and that which was said in the *Page 532 
will must control over a reconstructed memory of what the scrivener now thinks testator said. In re Gluckman's Will,87 N.J. Eq. 638; 101 Atl. Rep. 295, in which case the court held that the testator was capable of making a will. It matters not what variation may be found between instructions given and the executed instrument. "It is the latter which controls." This evidence of the scrivener was received merely for the purpose of throwing light upon the state of mind of the testator and not to establish proof of facts which may have been stated by him.
Other evidence was admitted for the purpose of showing that the relatives of testator named in his will were not attentive during his lifetime and that the inference to be drawn therefrom was that under these circumstances testator would naturally favor his mother-in-law by giving her something over and above the gifts to them. This evidence was, of course, admissible, but has little weight by reason of its being rather vague and in view of the fact that testator apparently did not resent any lack of attention on their part, as was evidenced by his bequest to them in the second paragraph aforesaid.
Again referring to paragraph 7, it will be observed that testator did not again use the verb "bequeath" but says that Mrs. Libby is to "receive." He does not say she is to receive as a gift or as her own the bank deposits and partnership interest. He had already "bequeathed" to Mrs. Libby 30% minus the deduction of funeral expenses and $200 of his entire estate, which bequest would include these deposits and the interest in the partnership, and it is hard to conceive that having done so he wanted to give to Mrs. Libby the entire beneficial enjoyment of the accounts and the partnership, to the exclusion of his brothers and sister, to whom he had already also bequeathed percentages thereof. He declares his executrix, Rose Libby, is to "receive" the bank accounts and partnership interest. He does not say to hold and enjoy as her own or that she should receive them before a percentage division is made of his estate, nor does he say that these accounts are to be deducted from his estate before division *Page 533 
is made, as he did as to the cemetery fund and funeral expenses in paragraph 4. It would seem that in using the verb "receive" instead of "bequeath" testator's intention was to deal differently with the bank accounts than when he used the word "bequeath" in items 1 to 6 in the second paragraph. If so, he must have meant what he said, that his executrix should "receive," intending her so to do, for the purposes expressed in his will, to wit, to divide 90% of his entire estate and pay out the same according to the directions in paragraphs 2, 3 and 4 of the will. Now, if this is true as to the first paragraph of clause 7, so must it be in the final paragraph. True, he did not repeat "my executrix Rose Libby to receive," but he used the same verb "receive" and evidently did not intend to distinguish the manner of her use and disposition of the partnership assets from the moneys in bank.
There is no question that the scrivener was not learned in the science of drawing wills, but he was nevertheless an educated man, a college graduate, and well versed in the English language and no doubt knew the import of the language used by him, and especially is this so in view of the fact that he did not resort to the use of technical language in drafting the will. In addition to this, testator was evidently a man of intelligence and capable of thoroughly understanding the simple language used by his scrivener. Why then, if testator wanted to give Mrs. Libby the beneficial enjoyment of the bank accounts and the interest in the partnership, instead of her merely receiving them as executrix for the purpose of carrying out the provisions of the will, did the scrivener and testator use the verb "bequeath" in paragraph 1 and discard that verb and substitute "receive" in paragraph 7?
While it is true that the verb "bequeath" may be said to have a technical legal significance among lawyers, stripped of that significance it is of common use by laymen and its ordinary meaning is well understood and it is defined by Webster "to give by will, make a bequest of, and to hand down to posterity; transmit." It must be assumed that the verb "bequeath" was so understood by testator and that when he used the word "receive" in paragraph 7 he did so for the *Page 534 
purpose of distinguishing his intent as expressed in paragraph 2. True it is that a person may receive a thing by way of gift, but he may also receive a thing in trust, and he may receive possession of a thing without the right of ownership. An executor receives the assets of an estate, but not by way of gift. It is not to be supposed, it seems to me, that testator used the verb "receive" as synonymous with "bequeath" and if not, he must have intended that the receipt of the bank accounts, c., in paragraph 7 was not the receipt of a gift of those things, 90% of which he had already given by paragraph 2.
Again we note that in the fourth paragraph of the will testator directs that his funeral expenses and the legacy to the cemetery be "deducted" from "my estate before division is made." He, of course, means that the percentage bequests in paragraph 2 shall be reduced by the amount of the funeral expenses and the cemetery legacy, and he thus, by unequivocal language, cuts down the bequests in paragraph 2. When he comes to paragraph 7 he does not direct that the bank deposits and the interest in his partnership be deducted before division is made, so that if Mrs. Libby's contention is correct, testator did not mean what he clearly said in paragraph 2, i.e., 90% of his estate, "real, personal and mixed," less the deduction in paragraph 4, "I bequeath," but on the contrary, he bequeathed 90% of his estate, less bank accounts and his partnership interest and the deductions in paragraph 4. The deduction of $15,766.72 bank deposits and $5,798.87 partnership interest from "my estate, real, personal and mixed" which testator clearly bequeathed in paragraph 2 would mean a deduction of $21,565.59 from a total estate of $41,348.59 and none of the beneficiaries named in paragraph 2 would get their stated percentage of "my estate" as therein set forth. Mrs. Libby would take $21,565.59, representing the bank accounts and partnership interest, and 30% of testator's remaining estate, and his sister would take 30% of the remaining estate and not 30% of "my estate," and this, of course would be true as to the percentage shares of the four brothers. If testator intended this result he certainly did not say so in his will. *Page 535 
It is a settled principle of law that it cannot be supposed that a man of intelligence would use terms of dubious import to express the same purpose after showing that he was acquainted with the technical language used for declaring it with positive and absolute certainty. West Jersey Trust Co. v. Hayday,124 N.J. Eq. 85; 199 Atl. Rep. 407; affirmed, 125 N.J. Eq. 90;4 Atl. Rep. 2d 280.
By ascribing a different meaning to the verbs "bequeath" and "receive" as used by testator, we are not met with any repugnancy between paragraphs 2 and 7 of the will. By considering them as synonymous, we are. By one method of arriving at testator's intent we reconcile the second and seventh paragraphs and by the other method one paragraph is in conflict with the other. It is certain that testator made as clear and complete a gift in the second paragraph of his will as language could devise, and the rule is that a clear gift is not to be cut down by subsequent words of doubtful import and that words of doubtful import cannot detract from the positive language of an earlier provision in the will where their effect would be by implication to diminish the first gift. Johnson v. Haldane, 95 N.J. Eq. 404;124 Atl. Rep. 63; McDonald v. Clermont, 107 N.J. Eq. 585 (at p. 589);153 Atl. Rep. 601.
It would seem to me that there is little room for doubt that testator did not intend to cut down the absolute gift in paragraph 2 by paragraph 7, but even if there is a doubt entertained by others, the language used by testator in paragraph 7 is of doubtful import and cannot detract from the positive language used in paragraph 2.
It is true that "where two dispositions of a will are incurably repugnant, it is the latter of the two to which effect will be given." Lippincott v. Davis, 59 N.J. Law 241 (at p. 247);28 Atl. Rep. 587; Byrne v. Byrne, 123 N.J. Eq. 6;195 Atl. Rep. 848; Cronan v. Coll, 69 N.J. Eq. 694; 60 Atl. Rep. 1092;Hendershot v. Shields, 42 N.J. Eq. 317; 3 Atl. Rep. 355. This rule of construction, however, must be applied in conjunction with the further rule that words of doubtful import cannot detract from the positive language used in the earlier provisions of the will. West Jersey Trust Co. v. Hayday, supra; Rogers
v. Rogers (Court of Chancery, *Page 536 1891), 49 N.J. Eq. 98, 99; 23 Atl. Rep. 125; Gulick v.Gulick's Executors (Court of Errors and Appeals, 1875),27 N.J. Eq. 498, 501; affirming 25 N.J. Eq. 324; Kimble v. White
(Court of Chancery, 1892), 50 N.J. Eq. 28, 31;24 Atl. Rep. 400; Sayre v. Kimble (Court of Chancery, 1921), 93 N.J. Eq. 30,32; 114 Atl. Rep. 744; Johnson v. Haldane, supra; McDonald
v. Clermont, supra, and Commercial Trust Co. v. Kohl
(Court of Chancery, 1942), 131 N.J. Eq. 233; 24 Atl. Rep.
2d 809.
In Kimble v. White, supra, the court said, "subsequent vague words were not sufficient to control the prior clear words," and quoted the New York rule with approval, "where one estate is given in one part of the instrument in clear and decisive terms, such estate cannot be taken away or cut down by raising a doubt upon the extent, meaning or application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that estate."
It seems to the court that paragraph 2 and paragraph 7 of the will are not incurably repugnant, but that reading them as component parts of the same will and giving both their proper effect, the entire will sets forth testator's intent to have been that Mrs. Libby should receive the beneficial interest in 30% of his entire estate, real, personal and mixed, less $200 to the cemetery, and funeral expenses, and that she should, as executrix, receive the bank accounts and partnership interest in order to make distribution in accord with the provisions of the will.
It is argued that there should be a re-arrangement of the paragraphing of the will and that paragraph 2 be considered as a residuary clause, i.e., that testator meant to give Mrs. Libby the bank accounts and partnership interest outright, the cemetery $200 and $100 each to the six nieces and $100 to a nephew and $100 to a friend, and then to bequeath the residue of the estate in the percentages set forth in paragraph 2. By so doing Mrs. Libby would be advantaged, but there is no justification for such a re-arrangement of the will. It is quite evident that when testator finished the bequests in *Page 537 
paragraph 2 he knew how to cut down on that which was to be divided on the percentage basis, as is evidenced by paragraph 4:
"I hereby instruct that all my funeral expenses be deducted from my estate before division is made and also the amount to be paid the Montefiore Cemetery, as per terms set forth in my will, be paid."
While courts have frequently disregarded or re-arranged paragraphing, such a course is only resorted to when necessary so to do so that the construction of the will may be in accord with the manifest intent of the testator.
 A decree will be advised in accord herewith. *Page 538