MARTIN LANE, Trustee under the last will and testament of Jesse Lane, MARTIN LANE, ANNA B. ELLIOTT and SALLY HARVEY, defendants below, appellants, vs. FANNIE S. LANE, Administratrix of Jesse Lane, complainant below, respondent.

*Appeal—Chancery—Will; Construction of—Power of Appointment—Execution of—Common Law—Absence of Statute— Practice—Intention of the Testator.*

1.   A, by his will, gave unto B a certain sum of money in trust to pay the income therefrom to the testator's son for his sole use during his natural life, and upon his decease then in trust to dispose of said sum in such manner as the son, by his will, or by any writing executed as such, should direct and appoint, and in default of such appointment, then in trust, to pay, &c.   The said son, by his will, provided as follows :   "All my estate, real and personal, of whatever kind, and wheresoever situated, I give, devise and bequeath to my brother, etc.   *Held* that by the will of the son there was not a valid execution of the power of appointment given to him by the will of his father.

2.   The rules of the common law in respect to the execution of powers were changed by the statute of *1 Victoria, Chap. 26, Sec. 27*, passed in 1837, which provided that a general devise of the real estate of the testator should be construed to include all real estate over which such testator may have had a power of appointment, and should operate as the execution of such power, unless a contrary intention should appear by the will ; and that a bequest of personal estate in like general words should operate as the execution of such power, under like circumstances.   In many of the States the common law rules as to the execution of powers have been altered by statutes similar to that of *1 Victoria*, but where not so altered, with very few exceptions, said rules appear to be in force in this country.

3.   At common law a power or authority was not considered as executed unless by some reference to the power or authority, or to the property which was the subject of it, or unless the provision made by the person entrusted with the power would have been ineffectual,   *   *   *   would have had nothing to operate upon except it were considered as an execution of such power or authority.

4.   The donor of the power being a citizen and resident of this State, and his will a Delaware will, and the trustee a citizen and resident of this State, the question as to the execution of the power is to be determined by the law of this State, and not by the law of another State, the domicil of the donee of the power.   Questions as to the execution of a power of appointment of personal property are to be decided by the law of the domicil of the donor of the power, and not by the law of the domicil of the donee of the power.

5. The case of *Davis vs. Vincent, 1 Houst., 416,* is a distinct recognition of the binding force in this State of the common law rules relating to the execution of powers; and, even in the absence of any decision, should be adopted, because the practice here has been quite uniform, to adhere to the common law until altered by statute, and especially so in matters relating to title to property.

6. The words, "of whatever kind and wheresoever situate" do not in any degree enlarge the meaning or operation of the words, "All my estate." The latter words obviously refer to the testator's own property, and not to that as to which he had only a power of appointment.

7. The will of the donee of the power does not allude to the will creating the power, or to the power or to the trust fund, the subject of the power; and if its operation be limited to the testator's own estate it will not be ineffectual, because he had a sufficient estate of his own to answer the provisions of the will.

*(June 16, 1903.)*

JUDGES SPRUANCE, GRUBB, PENNEWILL and BOYCE, sitting.

*George Tucker Bispham* (of the Philadelphia bar) and *Benjamin Nields* for appellants.

*William S. Hilles* for respondent.

Supreme Court, January Term, 1903.

APPEAL from the Court of Chancery in and for New Castle County.

SPRUANCE, J., delivering the opinion of the Court:

The complainant below, Fannie S. Lane, administratrix of Jesse Lane, filed her bill in the Court of Chancery for New Castle County, against Martin Lane, trustee, and the other respondents, for an accounting by the said trustee, and for a decree that he pay to the complainant a certain legacy, with its increase and income, alleged to be the property of the complainant as administratrix as aforesaid.

The case was heard by the Chancellor upon Bill and Answer and an agreed Statement of Facts.

The following are the material facts disclosed by the record :

Jesse Lane, the elder, by his will bearing date April 15, 1880, bequeathed *inter alia* as follows :

"Item 8. I give and bequeath unto Edward Bringhurst, Junior, the sum of fifty thousand dollars, in special trust to invest the same in some safe and productive securities, with power from time to time to call in and reinvest the same, as may be necessary, and all the interest, dividends and income which may accrue therefrom to receive and pay over into the proper hands of my son, Augustin S. Lane, for his sole use during his natural life ; and upon his decease then in trust to dispose of said principal sum of fifty thousand dollars in such manner as my said son Augustin by his last will and testament, or by any writing executed as such, shall direct and appoint, and in default of such appointment then in trust to pay and distribute the said principal sum of fifty thousand dollars to and among the children of my said son Augustin living at the time of his death and the issue of any deceased child of said Augustin in equal shares, but so that such issue of any child of said Augustin, deceased, in his lifetime shall take among them equally, if more than one, only the share their parent if living would take ; and in default of any children or issue of the said Augustin surviving him then in trust to pay over and dispose of the said sum of fifty thousand dollars, and any and all other sum of money held by said trustee for the use and benefit of said Augustin under the provision of this will, in equal shares to my son, Martin Lane, and to the trustee herein appointed for my daughter, Anna B. Elliott, and to the trustee herein appointed for my daughter, Sally Harvey, to be held by said trustee in special trust to invest, apply and dispose of in the same manner and subject in all respects to the trusts declared respecting the several legacies herein bequeathed in trust for my said daughters, Anna B. Elliott and Sally Harvey," etc.

The said testator, Jesse Lane, was, at the time of making said will, and at the time of his death, domiciled in, and a citizen of,

the State of Delaware ; and his will was proved before the Register of Wills for New Castle County. He died in the year 1881, leaving to survive him the said Augustin S. Lane, Martin Lane, Anna B. Elliott and Sally Harvey.

The said trustee, Edward Bringhurst, Junior, renounced and disclaimed the said trusts, and Martin Lane was duly appointed by the Chancellor trustee in his stead. The said Martin Lane at the time of his appointment was, and now is, domiciled in and a citizen of the State of Delaware. The said legacy of fifty thousand dollars was paid to the said Martin Lane, trustee, who continued to execute the trusts during the lifetime of the said Augustin S. Lane. The said trustee had never rendered or passed any account of said trust fund or its income.

The said Augustin S. Lane made his last will and testament, bearing date October 8, 1887, whereby he devised and bequeathed *inter alia* as follows :

" 2. All my estate, real and personal, of whatever kind and wheresoever situate, I give, devise and bequeath to my brother Martin Lane, his heirs, executors, administrators and assigns, in trust, to safely invest and keep the same invested, and out of the income derived therefrom to pay to my wife, Fannie, during the term of her natural life the sum of twelve hundred dollars per annum, in twelve equal monthly payments of one hundred dollars each, and in further trust to pay out of the remaining income from my said estate a sum sufficient for the support and education of my son, Jesse, until he shall arrive at the age of twenty-one years, at which time I give and devise and bequeath to him all my estate (except such part as may be required to pay the above annuity to my wife) to my said son Jesse, his heirs and assigns absolutely ; and in the event of my said son dying before the age of twenty-one without leaving children living at the time of his decease, then my will is that the part of my estate so as aforesaid willed to him shall belong to and be the property of the same persons, who, under the intestate laws of Pennsylvania, would be entitled to the

same if I had died unmarried and without issue and intestate. My will being that no estate (other than sufficient of the income for his support) shall vest in my said son until he shall arrive at the age of twenty-one years, or in the event of his sooner dying, leaving children him surviving, that the estate shall vest in such child or children who may be living at his decease.

" 3.   At the death of my said wife I direct that the part of my estate which may be retained by my said trustee to' secure the annuity to her shall go and belong to the same person or persons and for the same estate as is expressed in the second clause of my will with respect to that part of my estate therein bequeathed and devised."

The said Augustin S. Lane was at the time of making his said will, and at the time of his death, domiciled in, and a citizen of, the State of Pennsylvania; and his will was proved before the Register of Wills for Delaware County in said State.   He died in the year 1890, leaving to survive him his widow, the said Fannie S. Lane, and one child, Jesse Lane, Junior, his only issue.

The said Jesse Lane, Jr., died in the year 1899, intestate; unmarried, without issue, and not having attained the age of twenty-one years.   The said Fannie S. Lane was duly appointed and qualified as his administratrix.

The said Augustin S. Lane left a personal estate, after payment of debts, of $52,513.70.

The Chancellor decreed that said will of Augustin S. Lane was not an execution of the power of appointment given to him by the will of his father, Jesse Lane, and that the said legacy of $50,000, held by the said Martin Lane as trustee as aforesaid, should be paid to the said Fannie S. Lane, administratrix of Jesse Lane, Jr., with the accrued income thereof since the death of the said Augustin, less the amount of such income paid to the said Jesse Lane, Jr., in his lifetime; and that the said trustee should state and file an account of the income of said trust fund since the death of the said Augustin.

From said decree this appeal was taken.

The question for our determination is, whether by the will of Augustin S. Lane there was a valid execution of the power of appointment given to him by the said eighth item of the will of his father, Jesse Lane, the elder. If there was not, then under the will of Jesse Lane, the elder, upon the death of Augustin S. Lane, his son and only surviving issue, Jesse Lane, Jr., became entitled absolutely to the trust fund, and his administratrix, the complainant below, is entitled to recover the same with the accrued interest and income thereof.

The rules of the common law applicable to this case have been quite well established by numerous decisions in England and in this country.

In *Parker vs. Kett, 12 Mod., 469*, decided in 1701, it was said by the Court:

" When one has an authority and does an act which can be good no other way but by virtue and in pursuance of that authority, it shall rather be understood to have been by force of his authority than void, though in doing the act he takes no notice of his authotity; but where one has an interest and an authority together, and he does an act generally, it shall be construed in relation to his interest and not to his authority."

*Andrews vs. Emmot, 2 Bro. Ch., 297*, is a leading case upon this subject. By a marriage settlement certain bank annuities were conveyed to trustees in trust for certain purposes, and in trust after the decease of John Andrews and his wife, if there should be no child, to transfer the trust fund to such persons as the said John Andrews should by deed or will appoint. John Andrews, by his will, after giving sundry legacies, bequeathed, after the death of his wife, " all the rest and residue of his monies, and securities for money, goods, chattels and personal estates whatsoever and wheresoever, and of what nature, kind or quality soever to John Emmot." The Master of Rolls, after quoting the above citation from *Parker vs. Kett*, said: " If one applies this doctrine to the present case,

the testator has not referred to the power, but has done the act generally ; and he had property of which he could dispose " * * * " the testator has not described anything ; all his expressions will refer to his own property." *Held,* that the will of John Andrews was not an execution of the power.   Upon appeal the decree below was affirmed, the Lord Chancellor, holding that the power was not executed by the will of John Andrews, saying, " It is necessary, in order to do this, that he should, by his will, notify his intention to do it (execute the power).   It is too late now to expect that a testator, in order to execute a power, should make an express reference to it ; because it has been determined that, if a man disposes of that over which he has a power, in such manner that it is impossible to impute to him any other intention but that of executing the power, the act shall be an execution of the power."

In *Roach vs. Haines, 8  Veas., Jr. 584 (1803)*, Lord Chancellor Eldon held that a power of appointment was not executed by a general bequest of property described as " my estate and effects."   That such a bequest could pass only that in which the testator had an interest, and not that as to which she had merely an authority to appoint.

In *Bradley vs. Westcott, 13 Veas., Jr., 445 (1807)*, Sir William Grant, Master of Rolls, decided that a power of appointment was not executed by a bequest of " All my personal estate, money, securities for money, goods, chattels and effects whatsoever and wheresoever, and of what nature, kind or quality soever, and all my estate and interest therein," and that said bequest was applicable only to the testator's own personal property.

To the same effect are *Lovell vs. Knight, 3 Sim., 275 (1829)*, and *Lempriere vs. Valfy, 2 Sim., 108.*

In *Denn vs. Roake, 6 Bing. 475 (1830)*, Alexander, C. B., in delivering to the House of Lords the unanimous opinion of the judges, that the will of one Sarah Trymer did not operate as an

execution of her power to dispose of certain real estate by her will, said :

"There are many cases upon this subject, and there is hardly any subject upon which the principles appear to have been stated with more uniformity or acted upon with more consistency. They begin with Sir Edward Clare's case in the reign of Queen Elizabeth, to be found in the Sixth Report and are continued down to the present time ; and I may venture to say, *That in no instance has a power or authority been considered as executed, unless by some reference to the power or authority, or to the property which was the subject of it, or unless the provision made by the person intrusted with the power would have been ineffectual—would have had nothing to operate upon except it were considered as an execution of such power or authority."*

"In this case there is no reference to the power, there is no reference to the subject of the power, and there is sufficient estate to answer the devise without calling in the aid of the undivided moiety now in question."     \*     \*     \*     \*     \*     \*     \*

"It is said that the present is a question of intention, and so perhaps it is. But there are many cases of intention, where the rules by which the intention is to be ascertained are fixed and settled. It would be extremely dangerous to depart from these rules in favor of loose speculation respecting intention in a particular case. It is, therefore, that the wisest judges have thought proper to adhere to the rules I have mentioned, in opposition to what they evidently thought the probable intention in the particular case before them."

Sir Edward Sugden, in his admirable work on Powers (Vol. 1, page 385), uses this language :

"It is firmly settled, that a mere general devise or bequest, however unlimited in terms, will not comprehend the subject of the

power unless it refer to the subject, or to the power itself, or gener-
ally to any power vested in the testator."

The rules of the common law in respect to the execution of
powers were changed by the statute of *1 Victoria, Chap. 26, Sec.
27*, passed in 1837, which provided that a general devise of the
real estate of the testator should be construed to include all real
estate over which such testator may have had a power of appoint-
ment, and should operate as the execution of such power, unless a
contrary intention should appear by the will, and that a bequest of
personal estate in like general words should operate as the execu-
tion of such power under similar circumstances.

The leading American case is *Blagge vs. Miles, 1 Story, 426
(1841)*, in which Judge Story says:

" It is now admitted to be established, as the general rule, that
the intention of the testator is the Pole Star to direct the Court in
the interpretation of wills, * * * Similar doctrines now gen-
erally prevail in regard to the execution of powers, and especially in
regard to their execution by last will and testaments. * * *
The intention to execute the power must be apparent and clear, so
that the transaction is not fairly susceptible of any other interpreta-
tion. If it be doubtful, under all the circumstances, then that
doubt will prevent it from being decreed an execution of the
power.

     *      *      *      *      *      *      *

"Three classes of cases have been held to be sufficient demon-
strations of an intended execution of the power; (1) Where there
has been some reference in the will, or other instrument, to the
power; (2) Or a reference to the property, which is the subject on
which it is to be executed; (3) Or, where the provision in the will
or other instrument, executed by the donee of the power, would
otherwise be ineffectual, or a mere nullity; in other words, it would
have no operation, except as an execution of the power."

The rule thus stated was referred to with approval by the Supreme Court of the United States in *Blake vs. Hawkins, 98 U. S. 315, 396,* and *Lee vs. Simpson, 134 U. S., 572, 590.* In many of the States the common law rules as to the execution of powers have been altered by statutes similar to that of *1 Victoria,* but where not so altered, with very few exceptions, said rules appear to be in force in this country.

In Maryland a statute of this character was adopted in 1888, but prior to that time it was uniformly held that the intention to execute a power of appointment by will must appear by a reference in the will to the power, or to the subject of it, or from the fact that the will would be inoperative without the aid of the power.
*Mory vs. Michael, 18 Md. 227 (1861), Foos vs. Scarf, 55 Md. 301 (1880),* and *Cooper vs. Haines, 70 Md. 282 (1889).*

The common law rule was applied in New Jersey in the case of *Meeker vs. Breintnall, 38 N. J. Eq., 345 (1884),* and in Connecticut in the case of *Hollister vs. Shaw, 46 Conn., 248 (1878).*

In Massachusetts, in *Amory vs. Meredith, 7 Allen 397,* decided, in 1863, the common law rule was rejected, and the rule of the statute of *1 Victoria* adopted, as more likely to accomplish the intention of persons having powers of appointment. The Court says:

" We are aware of no decisions in this Commonwealth binding on us as an authority which should compel us to adopt a rule of construction likely in a majority of cases to defeat the intention it is designed to ascertain and effectuate. Seeking for the intention of the testator the rule of the English statute (*1 Victoria, Chap. 26, Sec. 27,*) appears to us the wiser and safer rule."

This case was followed in the later Massachusetts cases, and also in New Hampshire—*Emery vs. Haven, 67 N. H. 503 (1893).*

25

In Pennsylvania the Courts adhered to the old rule of construction until the adoption of the statute of 1879, which provided that " a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will."

If this statute was applicable to the question before us, the will of Augustin S. Lane would, without doubt, be a valid execution of the power.

But the donor of the power, Jesse Lane, being a citizen and resident of this State, and his will a Delaware will, and the trustee a citizen and resident of this State, the question as to execution of the power is to be determined by the law of this State, and not by the law of Pennsylvania, the domicile of Augustin S. Lane.

Questions as to the execution of a power of appointment of personal property are to be decided by the law of the domicile of the donor of the power, and not by the law of the domicile of the donee of the power.

This was conceded in the argument of the counsel of the defendants, and is abundantly established by authority in this country and in England.

*Cotting vs. DeSartiges, 17 R. I., 669 ; Sewall vs. Skipwith, 132 Mass., 131 ; Bingham's Appeal, 64 Pa. St., 345 ; Pouey vs. Hordern, L. R. (1900), 1 Ch. Div., 492 ; Hernando vs. Sawtell, L. R., 27 Ch. Div., 284, 294; In Re Megret (1901), 1 Ch. Div., 547.*

The only reported case in this State as to the execution of a power of appointment is *Davis vs. Vincent, 1 Houst., 416,* decided by the Superior Court in 1857.

By the will of John Goslin power was given to his widow by

her will "to devise the estate, both real and personal, to their children, or their proper heirs, as she might deem right and equal in her best judgment, which should be final." By her will she provided as follows: "My executors, hereinafter named, shall advertise and sell at public sale all of my real estate."

The Court held that she was not authorized by her husband's will to direct a sale of the property, and that there was therefore no valid execution of the power.

After alluding to the fact that the will of the widow contained no reference to the will of her husband, or to the right or power conferred by it, or to the subject matter of the power, and that in her will she invariably speaks of the land as her own, the Court adds: "We therefore cannot say that we are satisfied, in addition to the other objections raised to the execution of the power delegated, that it was the intention of Mrs. Goslin to execute it in the manner which her husband's will required, and which intention must always appear in the execution of such a power, either by a reference to the power itself or by some relation to the subject matter of it in a way which can leave no doubt of the intention to execute the power."

While the first ground of objection was sufficient, the latter were equally applicable and conclusive, and cannot properly be treated as *obiter*.

We regard this case as a distinct recognition of the binding force in this State of the common law rules relating to the execution of powers.

In the absence of any decision upon the subject in this State, we should feel obliged to adopt the common law rule of construction, as the practice here has been quite unform, to adhere to the common law until altered by statute, and especially so in matters relating to title to property. *Clawson vs. Primrose, 4 Del. Ch., 643.*

Applying the settled common law rules of construction to the will of Augustin S. Lane, we have no difficulty in reaching the conclusion that it was not an execution of his power of appointment.

It certainly cannot be said of this will that the intention to execute the power is apparent and clear, and that is not fairly susceptible of any other interpretation. It is at least doubtful, under all the circumstances, and that doubt is sufficient to prevent it from being decreed an execution of the power.

*Blagge vs. Miles, supra.*

There is nothing in the will or in the circumstances of the testator, his family or estate, so far as they are known to us, to indicate that it was his intention to execute the power.

He designates the property bequeathed by him as "All my estate, real and personal, of whatever kind and wheresoever situate." While he was entitled to the income of the trust fund during his life, and had the right to dispose of it by his will, it was not, in any proper sense, his estate or any part of his estate.

The words "of whatever kind and wheresoever situate" do not in any degree enlarge the meaning or operation of the words "All my estate."

In *Andrews vs. Emmot* and *Bradley vs. Westcott, supra,* similar, and even stronger, superadded words were held to have no such effect.

The words "all my estate," "my estate" and "estate," as they occur in the latter part of the second item, and in the third item of the will, obviously refer to what the testator had already bequeathed, viz., his own property, and not to that as to which he had only a power of appointment.

This will does not allude to the will creating the power, or to the power, or to the trust fund, the subject of the power. If the operation of the will be limited to the testator's own estate it will

not be ineffectual, as he had at the time of his decease a personal estate, the income of which was abundantly sufficient to pay the annuity of $1200 for his wife and to support and to educate his son during his minority.

We are, therefore, of the opinion that the decree of the Chancellor should be affirmed, and it is so ordered.