THE GERMAN PIONEER VEREIN

*v.*

GEORGE A. MEYER, executor, &c.

[Heard and decided January 29th, 1906.]

1. In construing a will, parol evidence as to the situation and surroundings of testator, and the objects and persons with whom he was familiar and on whom his affections rested, is competent to show what testator meant by the words employed.

2. In an action to construe a will, evidence examined, and *held* to show that, in giving a legacy to the German Turner Home, Jersey City, testator intended complainant, the German Pioneer Verein, as beneficiary.

3. Where there was abundance of property to pay a legacy, a surplus of nearly $30,000 in the executor's hands being shown, he was liable for interest on a legacy amounting to $1,000, payment whereof he deferred; the fact that the surplus consisted mainly of real estate, which, as residuary legatee and devisee, the executor desired to hold for better prices, not excusing the non-payment.

On final hearing on bill, answer and proofs.

*Mr. Robert S. Hudspeth,* for the complainant.

*Mr. Francis Scott,* for the defendant.

PITNEY, V. C.

The complainant is a benevolent society, incorporated as such on the 17th day of May, 1888, by the name of The German Pioneer Verein of Jersey City, New Jersey.

The declared object is

"the relief of such of the members thereof as shall, by sickness, old age or other cause, be rendered incapable of their usual occupation or calling; to give and extend benevolent and charitable relief and assistance to persons who are not members or incorporators, and other charitable objects that may be provided for in the constitution and by-laws of such incorporation."

The defendant is the executor of one George A. H. Meyer, a German who lived for many years in Jersey City, and died on the 5th day of October, 1900, testate of a will wholly in his own handwriting, in which he gives various legacies; among others, one in these words: "The German Turner Home, Jersey City, one thousand dollars."

The complainant by its bill claims that it is the legatee intended by the testator.

The defendant, who is also residuary legatee and devisee, by his answer does not deny that he has assets sufficient to pay all the legacies given by the will, but simply denies that the complainant is properly described as or can be properly held to be the legatee intended, and further sets out as follows:

"And your defendant further says that said legacy fails by reason of the fact that there is no German Turner Home in Jersey City, and what the deceased meant by this term cannot be ascertained with reasonable certainty and accuracy so that the court can safely make a decree that the said legacy should be paid to any person or corporation."

The complainant produced convincing proof of the allegation of fact in the answer that there is no "German Turner Home" in Jersey City, but alleged in its bill and sustained by proof the following facts: Some time before the date of the complainant's incorporation an old German gentleman by the name of Raymond Rath, a resident of Jersey City, died testate of a will in which he left a fund of $20,000 to be paid to any society which would purchase land in Jersey City fit to be occupied by a building for a home for old people and devote it to such purpose and erect a home on it. Whereupon some benevolent Germans in Jersey City formed themselves legally into the association, the complainant herein, raised funds among themselves sufficient to purchase the necessary land, and did purchase it, and altogether qualified themselves to receive and did receive this bequest of $20,000, and with it erected a suitable building, which they, in memory of Mr. Rath, named the Raymond Rath Altenheim. The word "altenheim" is a German word, which means "home for old people."

The institution has been maintained ever since, and is known

as "the home," and it is the only institution of its kind in Jersey City.

At and before the time of the complainant's organization there was in Jersey City a hall occupied by a turner association. The word "turner" in German means "athletic," and "turner hall" means an "athletic hall."

It was clearly proven that there is not and never has been anything in common between a "turn verein"—athletic association—and such an association as the complainant.

The distinction is stated by an elderly German witness, Mr. Ringle, thus:

"I don't think there is a turn verein in the world that has a tendency to support poor people; every turn verein that ever I heard of has a tendency of socialistic or anarchistic propensities, and learn young men how to drink beer and liquor of large quantities; that is about the tendency; now, you have the whole thing in a nutshell."

But it so happened that the complainant association, both before and after its organization, while engaged in raising money to buy land to qualify itself to be the legatee of Mr. Rath's $20,000, and in the erection of the building, met in a turner hall in Jersey City, and issued circulars with a printed head as follows: "Deutschen Pioneer Verein. Headquarters, Turner Hall, 259 First street, Jersey City." Hence the idea came to be entertained by some persons that the "home" which the complainant was seeking to establish could be properly known and designated as the "Turner Home."

The complainant continued its meetings at that Turner Hall until it—the hall—was abolished.

The complainant was organized in May, 1888, and the will herein was executed in January, 1900.

The testator, according to the proofs, was interested from the start in the complainant association and its objects. He attended meetings of the society in Turner Hall, and later on, after the home was built, in the home. He was a frequent visitor at the home and made contributions in money to its support, and was elected and made an honorary member thereof, and always expressed great interest in its welfare.

The proofs further show that the institution was commonly spoken of as "the home.'"

Now I think when we consider three or four circumstances in the present case all difficulties vanish.

In the first place, all the parties are German. In the next place, there is no such thing in Jersey City or elsewhere known as a "Turner Home."

In the next place, the complainant's "home" is the only institution of the kind in Jersey City.

Now if we apply to that situation two maxims—the first one expressed in the words *ut res magis valeat quam pereat,* expressing the desire of the court that the legacy should take effect rather than that it should lapse, and the other, *falsa demonstratio non nocet cum de corpore constat*—the whole difficulty vanishes. Here the false description lies in the use of the word "turner," an adjective.

Parol evidence to show the situation and surroundings of the testator, and the objects and persons with whom he was familiar, and upon whom his affections were resting, is always competent in these cases. It does not contravene the general rule of law against the use of parol evidence to supplement wills. It does not attempt to show what the testator *meant* to say, but simply to show what he *meant by what he did say,* or, as was said by a learned English judge, in *Richardson* v. *Watson, 4 Barn. & Ad. 787,* "such evidence is admissible to show not what the testator intended, but what he understood to be signified by the words he used in the will."

A large number of illustrative cases are collected by Vice-Chancellor Wigram, in his essay on "Extrinsic Evidence in Aid of the Interpretation of Wills," fourth edition, by Knox Wigram.

I will only mention *Beaumont* v. *Fell, 2 P. Wms. 140; Fonnereau* v. *Poyntz, 1 Br. Ch. C. 472; Boys* v. *Williams, 2 Russ. & M. 689; Wilson* v. *Squire, 1 Younge & Coll. C. C. 654.*

The case in hand comes peculiarly within Vice-Chancellor Wigram's Third and Fifth Propositions.

I will content myself with quoting the author's conclusion (at *p. 88 § 96*) that the authorities lead to the following proposition :

"Every claimant has a right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called upon to declare."

Misdescriptions of benevolent and charitable corporations have been a fruitful cause of the exercise of the power of the court in cases like the present.

The list of English cases will be found in *2 Chit. Eq. Index 1160, tit. "Charity."* I cite the following: *Coldwell* v. *Holme, 2 Sm. & G. 31; 18 Jur. 396; 23 Law Jour. Ch. 594; King's College Hospital* v. *Wheildon, 18 Beav. 30; 23 Law Jour. Ch. 537; Bunting* v. *Mariott, 19 Beav. 163; Bradshaw* v. *Thompson, 2 Younge & Coll. C. C. 295; 7 Jur. 386; Re Maguire, 39 Law Jour. Ch. 710; 9 L. R. Eq. Cas. 632.* In the United States a list is found in Mr. Randolph's edition of *1 Jarm. Wills 760.* In New Jersey, in *3 Stew. Dig. 393.*

For these reasons I conclude that the complainant is entitled to the said sum of $1,000, with interest from one year from the date of the testator's death.

At the hearing a faint attempt was made to show that interest should not be allowed, and that the payment of the legacy should be deferred, but I think it failed. I have said that the defendant executor is also residuary legatee and devisee. By his answer he shows that there is abundance of property to pay the legacy, and he was also met by an affidavit made and filed by him in answer to an application herein for an *interim* injunction which gives the detail of the property and the legacies already paid and those remaining to be paid, showing a surplus of nearly $30,000. The only objection to present payment was that the surplus consisted mainly of real estate, which the defendant desired to hold for better prices. This, of course, is no excuse.

I will advise a decree for the payment of the legacy, with interest, against the defendant, both as executor and individually, with a counsel fee of $50.