CAROLYN HARRIS GILBERT, Executrix under the Last Will and Testament of CLARA NOWELL, deceased,

*vs.*

BERTHA SMITH and CAROLYN HARRIS GILBERT.

*New Castle, October 16, 1947.*

*Clair J. Killoran* and *F. William Carr,* of the firm of Killoran & Van Brunt, for complainant.

*Leonard G. Hagner,* for defendant Bertha Smith.

*Charles L. Paruszewski,* for defendant Carolyn Harris Gilbert.

SEITZ, Vice-Chancellor: I must decide whether the

testatrix, by use of the language "Every thing else in my room to Mrs. Carolyn Harris Gilbert," intended thereby to bequeath the money in her savings account evidenced by a savings deposit book found in her room after her death.

This is a bill for instructions involving the will of Clara Nowell, ·deceased, filed by Carolyn Harris Gilbert, executrix. Clara Nowell died in Wilmington, Delaware on February 4, 1946, leaving a will which I shall quote:

"Sept. 30, 1945

"To Mrs. Carolyn Harris Gilbert, 632 S. Monroe St., Baltimore, Md. I give absolute power of attorney over my estate. I desire a very plain, inexpensive funeral in charge of Marshall Yeatman and Son.

"To Jean Lee, daughter of Mrs. Myrtle E. Lee, for many kindnesses to me, I give my large diamond and opal ring and my small diamond ring.

"To Mrs. Myrtle E. Lee, furniture now in use in the house except including bureau in my room. Everything else in my room to Mrs. Carolyn Harris Gilbert.

"This will to be read in the presence of Carolyn Harris Gilbert, Mrs. Myrtle E. Lee, Jean Lee, and Marshall Yeatman.

"Bank Account in Artisan's Saving Bank, 5th and Market St.

(over)

"Favorite hymns to be played
"Thy Will be Done
"Hark! Hark! my Soul.

"Signed
"Clara Nowell.

"Jessie J. Christie.
"Margaret Kirkpatrick"

The defendant Bertha Smith is a first cousin and the only heir at law and next of kin of the testatrix and as such entitled to receive all the property as to which this testatrix died intestate. The other defendant is Carolyn Harris Gilbert who, as well as being the executrix, is also named as a beneficiary under the will.

At the death of the testatrix there was found in the Lee residence the following property which belonged to her:

furniture bequeathed to Mrs. Lee appraised at $205; jewelry bequeathed to Jean Lee appraised at $200; clothing and jewelry bequeathed to Mrs. Gilbert appraised at $100. In the room occupied by the testatrix there was found a savings deposit book, No. 28960 book #3, of the Artisans' Savings Bank showing $3,226.32 on deposit.

The sole matter in dispute involves the money in the savings account. The defendant Bertha Smith claims the money in the savings account on the theory that the testatrix died intestate as to such property, while the defendant Carolyn Harris Gilbert claims such money under the will on the theory that it passed to her under the language "Every thing else in my room to Mrs. Carolyn Harris Gilbert," since the savings deposit book was in her room.

There is no conflict in the evidence which has been adduced in this case. The parties differ, however, as to what inferences may be properly drawn from such evidence. Keeping always in mind that the testatrix drew her own will, let us look at this evidence.

The oral testimony showed that the testatrix in 1911, while a teacher in the Wilmington public schools, took the defendant Carolyn Gilbert from an orphanage when she was about three years of age. The testatrix, who never married, reared Carolyn as though she were her own daughter. In fact, Mrs. Gilbert went by the name Carolyn Nowell until she was about seventeen years of age, at which time she discovered that her real name was Harris. The testatrix bore all the expenses incident to Mrs. Gilbert's education and maintenance, and even provided her with rather expensive dancing lessons in the hope that she might enter upon a stage career.

Mrs. Gilbert lived with the testatrix until shortly before she went to study nursing. Not long thereafter Mrs. Gilbert, then about nineteen years old, married and moved to Baltimore. However, the evidence demonstrates that the feeling of real affection existing between the testatrix and

Mrs. Gilbert never waned. Twice Mrs. Gilbert came to Wilmington to nurse the testatrix, and through the years they visited, corresponded and exchanged gifts. The testatrix was also quite fond of Mrs. Gilbert's children. The over-all picture leads me to conclude that while Mrs. Gilbert was never legally adopted, the testatrix treated her, in the common acceptation of the phrase, like her own daughter.

With commendable frankness, the defendant, Bertha Smith, testified that she saw her cousin most infrequently. While they were friendly, it is clear to me that no such close relationship existed between them as existed between the testatrix and Mrs. Gilbert. It would, therefore, be ignoring the realities of the situation to conclude here that any consideration should be given to the rule of construction which prefers a blood relation to a stranger. Realistically speaking, Mrs. Gilbert was the blood relative of the testatrix and Miss Smith was the stranger.

The evidence showed that for sometime prior to her death the testatrix maintained a room in Wilmington in the residence of Mrs. Myrtle E. Lee, and that she kept her savings deposit book in her room prior to and at the time of her death in February 1946.

The solicitor for the defendant Bertha Smith contends that the evidence is of no assistance in construing the will because the will is not ambiguous or obscure. I am unable to agree with this contention because the language in question is far from a clear expression of intent. Moreover, the surrounding circumstances are always pertinent aids to construction. See *Bird v. Wilmington Soc. of Fine Arts*, 28 *Del. Ch.* 449, 43 *A.* 2d 476; *Girard Trust Co. v. Rector, Wardens and Vestrymen of St. Anne's Church*, ante p. 1, 52 *A.* 2d 591.

The issue then must be squarely faced as to whether we may fairly say that the testatrix intended the money in her savings account to be covered by the language she used in her will.

The savings deposit book was kept by the testatrix in her room prior to and at the time of her death. I infer from the proof that it was kept in her room at the time her will was executed. Therefore, when she willed everything else in her room to Mrs. Gilbert, she literally included the savings deposit book. May we fairly say that the testatrix intended to embrace her savings deposit book within the quoted language of her will and if so, was the inclusion of the book rather than reference to the money sufficient?

I conclude that the testatrix did intend the quoted language to include the savings deposit book found in her room after her death. In the first place, the evidence demonstrates that Miss Nowell knew her savings deposit book was in her room and she was conscious of her account when she drew her will because she made reference to it therein. Moreover, she only lived a few months after she drew her will.

Certain other considerations militate against a construction which would result in a substantial intestacy here. Thus, not only does the language of the will tend to indicate that the testatrix had real confidence in and regard for the defendant Mrs. Gilbert, but the evidence shows that such confidence and regard existed in fact. If we are to say that by the use of the language "Everything else in my room to Mrs. Carolyn Harris Gilbert," the testatrix did not intend to encompass the savings account, we must conclude that the testatrix intended to leave Mrs. Gilbert property worth only about $100. In view of the evidence already narrated, I do not believe it reasonable to conclude that the testatrix intended Mrs. Gilbert to receive property worth even less than that which the testatrix left to Mrs. Lee and her daughter. Yet we must say she consciously so intended, if we conclude that she did not intend the savings account to pass under her will.

It is difficult to believe that the testatrix did not intend her will to dispose of the money in the savings account. I say this because the testatrix died intestate as to over

85% of her property (and consciously so), unless the money in the savings account is covered by the will. The presumption against intestacy is certainly entitled to some weight under the circumstances.

Since I have concluded that the testatrix intended the language of her will to include the savings deposit book, it is next pertinent to inquire whether a testatrix may bequeath money by employing language which embraces a symbol in the form of a savings deposit book rather than the money itself. I believe such may be done and actually was done here. I know of no policy which would prevent the testatrix from so doing if such intent is fairly evident. While the practice of describing property by location is bound to raise problems and is, therefore, most dangerous and undesirable, see *Winkler v. Woodruff*, 21 *Del. Ch.* 147, 182 *A.* 409, nevertheless, the imperfections of testamentary expression should if reasonably possible, be treated as obstacles to be surmounted rather than impenetrable barriers. This is especially so in the case of home-made wills.

The defendant Bertha Smith argues that by mentioning in her will the location of the bank the testatrix demonstrated that she did not treat the money as being actually or symbolically in her room. In my judgment, this language was inserted merely to impart information, albeit unnecessary information. I accord it no greater significance.

In view of my conclusion as to the intent with which the testatrix used the language in question, it becomes unnecessary to examine the so-called general rule which provides that choses in action will not generally pass under a bequest of the contents of a house. See, e.g., *Old Colony. Trust Co. v. Hale*, 302 *Mass.* 68, 18 *N.E. 2d* 432, 120 *A.L.R.* 1207. However, this rule yields to evidence of a contrary intent. Moreover, this court will not fix any so-called inflexible legal meaning on words employed in a will to the exclusion of all other possible meanings. Compare *Campbell v. St. Joseph's Industrial School, ante p. —, 53 A. 2d* 768.

Nor do I believe that my conclusion is inconsistent with the opinion of Vice-Chancellor [now Judge] Pearson in *Equitable Trust Company v. Clavey,* 26 *Del. Ch.* 55, 21 *A.* 2d 719, affirmed 26 *Del. Ch.* 446, 28 *A.* 2d 309. The defendant Bertha Smith points out that this court in the *Clavey* case drew a distinction between tangibles and intangibles, and suggests that the same distinction is here important. Conceding that the distinction was given real weight in the *Clavey* case, it does not necessarily follow that the distinction is here operative. True, this testatrix listed tangibles, so-called, immediately prior to the language here under construction, but the doctrine of *ejusdem generis* is not a rule of property, but only a rule to aid in ascertaining intent. *Winkler v. Woodruff, supra.* Consequently, I do not believe that, under the language and circumstances here involved, the mere mention of tangibles calls for the inference that the subsequent language must be limited to so-called tangibles. In the *Clavey* case the distinction was rendered more significant because of the existence of a residuary clause. There, even though the language under construction was limited to tangibles, the intangible property passed under the residuary clause of the will. Here, the property must pass under the quoted language or else pass as intestate property. I conclude that the tangible-intangible distinction does not shed light on the intent of this testatrix.

I conclude that by the language "Every thing else in my room to Mrs. Carolyn Harris Gilbert" the testatrix intended to bequeath the money on deposit in her savings account as evidenced by the savings deposit book found in her room at the time of her death.

A decree accordingly will be advised.