95 A.2d 569 (1953)
DELAWARE TRUST CO.
v.
DELAWARE TRUST CO. et al.
Court of Chancery of Delaware, New Castle.
March 19, 1953.
*570 David F. Anderson (of Berl, Potter & Anderson), Wilmington, for plaintiff.
W. Reese Hitchens and H. James Conaway, Jr. (of Hering, Morris, James & Hitchens), Wilmington, for defendants Agnes Hubbard, Richard Hubbard, Eva V. Lofland, William Carney, Nell A. Beardsley, Edward Stewart, Linda Elizabeth Stewart, Linda Stewart Eklof and Agnes Hubbard Tisch.
Houston Wilson, Georgetown, for defendant Elizabeth Vaules Carlisle.
Howard Duane, Wilmington, for defendant Lester L. Carlisle, Jr.
Lawrence C. Elliott, Georgetown, for defendant Christian Science Soc. of Milford.
SEITZ, Chancellor.
The principal issue is whether a power of appointment created by an inter vivos trust instrument was exercised in the trustor's will.
This is a complaint for instructions by the executor and trustee under the will of Mary Blanche Carlisle Hirsch. All defendants have appeared by counsel except Carlisle Hubbard, Alice Mitchell Hubbard, Lulu C. Darby, John C. Darby and The First Church of Christ Scientist, Boston, Massachusetts, and a default judgment has been entered against them.
Mary Blanche Carlisle Hirsch (hereafter called the "trustor" or "testatrix") entered into an inter vivos trust agreement with Delaware Trust Company on December 21, 1940. Under this agreement she deposited with the Delaware Trust Company, as trustee, certain cash and securities having a value of about $125,000. She reserved the right to add to, withdraw from or revoke the trust in whole or in part. The net income was to be paid to her until her death or until she revoked the agreement. It was provided that upon her death:
"the trustee shall assign, transfer and deliver the trust fund as then constituted, as directed and appointed by the last Will and Testament of the Trustor or in the absence of such direction and appointment unto the next of kin of the Trustor according to the intestate law of the State of Delaware."
At the time the trust agreement was executed in December 1940 the trustor was a childless widow well advanced in years. Her next of kin at that date were as follows:
1. Carlisle L. Hubbard, Agnes Hubbard and Linda Elizabeth Stewart, the children of her deceased sister, Linda Carlisle Hubbard.
2. Paris T. Carlisle III, her brother; and
3. Lester L. Carlisle, her brother.
There is no evidence as to whether the trustor had a will in 1940. The trustor made a will in 1944 and another will in 1948. Neither of these wills, which were superseded by her last will of 1950, mentions the inter vivos trust or trust property.
The trustor died on June 18, 1951 leaving a will executed August 2, 1950 and a codicil, not here material except that it reaffirmed the will, executed May 22, 1951, and without having terminated the trust during her lifetime. At the time the testatrix executed her will and down to the date of her death, her next of kin under the Delaware intestacy law were:
1. Carlisle L. Hubbard, Agnes Hubbard, and Linda Elizabeth Stewart, the children *571 of her deceased sister, Linda Carlisle Hubbard.
Carlisle L. Hubbard had two children, Richard Hubbard and Agnes Hubbard Tisch; Agnes Hubbard was unmarried and about 68 years of age in 1950. Linda Elizabeth Stewart had two children, Edward Stewart and Linda Stewart Eklof.
2. Elizabeth Vaules Carlisle, daughter of her deceased brother, Paris T. Carlisle III, who died August 3, 1942;
Elizabeth Vaules Carlisle was 54 years of age in 1950 and unmarried.
3. Lester L. Carlisle, Jr., son of her deceased brother, Lester L. Carlisle, who died November 12, 1945.
Lester L. Carlisle, Jr., has one child, Richard Carlisle born in March 1951.
There is no express reference in the will of the testatrix to the inter vivos trust of 1940 or to her power of appointment thereunder. Nor is there any reference to the property making up the corpus of the trust as such. In her will she first made specific bequests including jewelry to various named nieces, grand-nieces and the wife of a nephew. She bequeathed her home furniture to her niece Agnes Hubbard, and $5,000 to her niece Linda Elizabeth Stewart. She then bequeathed small sums of money to three individuals. Finally she placed the residue in trust with a direction to the trustee:
"to receive and take over and retain so long as it shall deem it advisable, the securities in which my personal estate shall be invested at the time of my death * * *."
"The net income arising from the trust fund shall be paid in equal shares to Agnes Hubbard and to Elizabeth Vaules Carlisle in monthly payments so long as they both shall live, and upon the death of either of them, then the full income shall be paid in monthly installments to the survivor of them during the life of such survivor."
"Upon the death of the last survivor * * * I order and direct my said Trustee to pay over all the balance of my Estate * * * free and discharged of all trusts, as follows: * * *."
She then directs that $5,000 shall be paid to The Christian Science Society, Milford, Delaware; that ¾ of the balance shall go per stirpes to Edward Stewart and Linda Stewart Eklof, children of Linda Elizabeth Stewart, and that the remaining ¼ go per stirpes to Richard Hubbard and Agnes Tisch, children of Carlisle L. Hubbard. No member of the Lester Carlisle branch is mentioned in the will or codicil. The testatrix also directed that various taxes should be paid by the executor from the estate.
The testamentary estate of the testatrix was worth about $102,000 at the date the will was executed. It was about $97,000 at the date of her death. The inter vivos trust made up of stocks, bonds and cash, had a market value of about $220,000 at the death date, although it increased thereafter. In view of the values known to the testatrix it must be inferred that she was aware of the operation of her will upon her property. Moreover, in view of the relatively unchanged condition of her finances between the date her will was executed and the date of her death, it seems fair to consider the actual disposition under her will as though it were within the contemplation of the testatrix when she executed her will and codicil. The personal property in the so-called testamentary estate at the date of death was valued at $51,000, but all except $750 was used to cover bequests, expenses, taxes, etc. Thus only $750 along with real estate having a value of $46,000 passed into the residuary trust, leaving aside the inter vivos trust property. One of the two pieces of real estate, the home of the testatrix, was worth about $22,500. The other is a farm having a value of $23,500 which produced a yearly net income for the period of 1940 to 1950 of about $500.
The testatrix was in fact advised as to the nature and value of the assets in the trust corpus practically up until the date of her death. It also appears that she was a reasonably competent person and aware of her personal affairs.
*572 The Duane-Wilson defendants seem to suggest that the evidence of the surrounding circumstances are generally inadmissible unless the will is "ambiguous". In resolving these questions I shall apply to the evidence the following guide so well stated for the Supreme Court of Delaware by Judge Rodney in Bird v. Wilmington Society of Fine Arts, 28 Del.Ch. 449, 43 A.2d 476, 481:
"* * * it is the plain duty of the Court to ascertain the intent of the testator not alone from the bare words of a will, found in the instrument itself, but from the circumstances which then surrounded the testator, and which clearly entered into his thoughts and created his intent. Maloney v. Johnson, [24 Del.Ch. 77] 5 A.2d 660. The corollary of this rule, however, is equally clear, and the consideration by a court of the surrounding circumstances entering into the construction of the words of a will is confined to those circumstances existing at the time the will was executed. Subsequent events or circumstances not clearly shown to have been definitely anticipated by the testator, and happening after the execution of a will, can form no part in the intent of that will, or enter into the construction of its terms."
If it be suggested that some of the language of the Supreme Court in Miller v. Equitable Trust Co., 27 Del.Ch. 282, 32 A.2d 431, is inconsistent with the language in Bird v. Fine Arts, I can only say that I accept the later statement in the Bird case as the governing rule. We must look at the entire will in the light of the pertinent surrounding circumstances to decide whether the testatrix intended by her will to execute the power of appointment contained in her inter vivos trust agreement. See Wilmington Trust Co. v. Grier, 19 Del.Ch. 34, 161 A. 921. This must be done without considering any testimony or exhibits showing statements as to intention and purpose in the use of any language in the will. See Bird v. Fine Arts, supra. The same is true as to statements of opinion. I, therefore, exclude all such evidence in reaching my conclusion.
The question as to whether a power of appointment has been exercised by will has been considered in numerous Delaware cases. It was considered at some length by the Supreme Court of Delaware in 1903 in the case of Lane v. Lane, 4 Pennewill 368, 55 A. 184, 64 L.R.A. 849. The court first stated that the intention to exercise the power must be clear. They then recognized that the testator's intention to exercise the power may be found: (1) Where there is some reference in the will to the power; (2) Where there is some reference in the will to the property, which is the subject on which it is to be executed; (3) Where the provision in the will would otherwise be ineffectual or a mere nullity except as an execution of the power.
However, as Mr. Justice Story stated in Blagge v. Miles, 3 Fed.Cas.No.1,479, cited with approval in the Lane case, "* * * if a case of clear intention should arise, although not falling within the predicament of these classes, it must be held, that the power is well executed, unless courts of justice are at liberty to overturn principles, instead of interpreting acts and intentions." The late Chancellor Wolcott approved this language in Wilmington Trust v. Grier, supra. Thus the first three classes mentioned are illustrative and not exclusive rules of construction to ascertain intent in connection with the exercise of powers.
I pause to point out that if not careful the court can become so preoccupied with the superficial niceties of these classes that it loses sight of its ultimate duty  to ascertain the testator's intention.
All parties here agree that the will of the testatrix contains no reference to the power or to the property which is the subject on which it is to be executed. We thus have two contentions of the Hitchens' defendants to consider:
1. The residuary clause is ineffectual unless it encompasses the power.
2. There are other circumstances which, when considered in connection with the will, show a clear intention to exercise the power.
*573 While Hitchens' defendants argue that this case comes within the so-called third class, it seems to me that it must come, if at all, within what may be called the fourth class dealing with miscellaneous situations showing an intention to exercise a power. However, some of the discussion under this head necessarily impinges upon matters relevant to the third class. The Hitchens' defendants contend that the testatrix was especially fond of her two relatives, Agnes Hubbard and Elizabeth Vaules Carlisle. At the time she drew her will she knew they were both unmarried, in modest financial circumstances, and had no immediate family of their own to care for them, and because of their age no so-called "prospects". Compare Snyder's Estate v. Denit, 195 Md. 81, 72 A.2d 757, 18 A.L.R.2d 663. The Duane-Wilson defendants concede that not only does the will clearly so show, but that in fact the testatrix entertained a special fondness for the two nieces mentioned.
In seeking to ascertain intent, I take it this court can look to see whether the testamentary trust income provision here involved, apart from the provision dealing with the distribution of corpus, would be effectual in view of the circumstances known to the testatrix. I further conclude that this means effectual in a real sense under the circumstances. In other words, I do not believe such a provision is necessarily effectual solely because there is some income no matter how small. My approach seems to be impliedly recognized in Lane v. Lane, supra. See also Hartford-Conn. Trust Co. v. Thayer, 105 Conn. 57, 134 A. 155. To the extent Equitable Trust Co. v. Causey, 24 Del.Ch. 259, 9 A.2d 714, perhaps suggests a different view, I cannot agree with it.
Can it be said that unless the inter vivos trust property is a part of the residuary estate, the residuary trust provision in its income producing aspects will be rendered substantially ineffectual? Let us consider this question in the light of the circumstances known to the testatrix when she executed this will. Compare HartfordConn. Trust v. Thayer, supra. While obviously she could not have known to a nicety the amount of the administration expenses, she knew there would be such expenses. She also was aware of her specific bequests. Thus, whether we consider the residuary trust corpus as though the real estate were retained or sold at its appraised value, the income would hardly be more than about $2,000 a year. Viewed, therefore, either on the basis of cash or real estate  and assuming values and returns on trust income actually known to the testatrix when she executed her will, it is apparent that if the inter vivos trust property is excluded, the testatrix will be deemed to have intended to will her favorite nieces an income of at most $1,000 a year apiece. The answer of the Duane-Wilson defendants that they would immediately receive substantial sums from the inter vivos trust if the power was not executed seems strangely inconsistent since it would leave them outright in the aggregate much more than the principal of the residuary trust.
It is true that the testatrix left these nieces some jewelry and furniture and that she knew these nieces would receive perhaps $5,000 apiece from their Aunt Rachel's estate upon the death of the testatrix. However, those amounts hardly warrant a conclusion inconsistent with the obviously carefully worked out scheme for the disposition of the testator's substantial assets.
The high regard and deep affection which the testatrix had for her two unmarried nieces when she executed her will and codicil, as shown by her will and the admissible evidence, see Gilbert v. Smith, 30 Del.Ch. 169, 55 A.2d 276, demonstrate that it is reasonable to infer that after her death she desired the income beneficiaries to receive substantial support for the rest of their lives from the testamentary trust.
The testatrix knew of her assets and the return on trust investments. She also knew that her inter vivos trust property was part of her estate for tax purposes. She was necessarily aware of the prior bequests made by her will and the fact that there would be substantial administration expenses. It seems clear, therefore, that she knew when she executed her will that her *574 testamentary property would not create a corpus which would produce substantial income when divided between her two nieces. Certainly an income of $1,000 a year apiece is nothing when related to price standards of which the testatrix was well aware. Moreover, there is nothing to indicate that she desired to show an undue preference for either niece. Yet such will be the result if the inter vivos trust property does not pass under the testamentary trust.
There was much evidence as to feeling existing against the Lester Carlisle branch of the family. Without considering the evidence as to some agreement between sister Rachel and the testatrix, I feel that the evidence which showed a coolness between the testatrix and the Lester branch was admissible in aid of construction. See German Pioneer Verein v. Meyer, 70 N.J. Eq. 192, 63 A. 835; affirmed 72 N.J.Eq. 954, 67 A. 23; 4 Page on Wills (Lifetime Ed.) § 1624. Moreover, it appears from the will and codicil that Lester's family, including a grandson born shortly before the execution of the codicil, were not mentioned therein, although the other branches were all mentioned.
While the testatrix apparently had a forgiving nature she also had a strong sense of "justice". I believe her idea of the application of these two principles rendered it perfectly possible for her to intend a result which would exclude the Lester branch of the family from sharing in any of her property. It is not for this court to say whether it approves of the testatrix' concept of mercy and justice. Conceding that this in and of itself does not warrant an inference against a construction which would result in Lester's branch sharing in the inter vivos trust property, nevertheless, such a construction will not run counter to any tangible expression of sentiment found in the provisions of the will and codicil.
It might be noted that the provisions for payment of the remainder of the testamentary trust to the individuals after the death of the income beneficiaries would have passed nothing under the earlier wills (1944 and 1948) unless construed to exercise the power. This is so because under them the home was not part of the residuary trust and the former bequest in remainder to the Church was $50,000 rather than the $5,000 left in the last will. Yet her assets were about the same. It seems reasonably clear therefore that, although no specific reference to the power appears, the court would have construed the previous wills to evidence an intention to exercise the power. Therefore, the absence of a specific reference should not build up too strong a demand for proof of intent on that account. It is also noteworthy that the last will was drafted actually by a layman from a copy of the 1948 will.
Another fact of significance is that Linda Elizabeth Stewart is left $5,000 in cash under the will, yet if the power was not exercised she also will get about $25,000 in cash under the inter vivos trust. In our search for intent, a finding which would have that consequence would seem most "unusual" under the circumstances.
The Duane-Wilson defendants suggest that certain indisputable facts render it extremely doubtful that the testatrix intended to exercise her power of appointment by will. If this is so, they correctly say that Lane v. Lane, supra, requires a finding in their favor. Thus, it is said that certain individuals, Carlisle L. Hubbard and Linda Elizabeth Stewart in particular, would be cut off from their "natural" shares if it be held that the testatrix exercised the power. The repeated reference to the "natural" share seems to me to suggest an emotional appeal which is not warranted by the provisions of the will. The "natural" share only arises if we reach the conclusion that the testatrix did not intend to exercise the power. Moreover, Carlisle's adult children are given one fourth of the remainder of the residuary trust while Linda Elizabeth Stewart is given $5,000 outright in the will and her adult children are given three-fourths of the remainder. It is thus rather strange to suggest that the testatrix ignored these branches of the family merely because the bulk of the testamentary property was given to their adult children rather than to them directly.
*575 Many other reasons suggested by the Duane-Wilson defendants are based upon certain dollar comparisons, depending upon whether or not the power was exercised. From these comparisons they seek to demonstrate that if the testatrix is said to have intended to exercise the power she would only have increased the dollar advantage to her favorite nieces by a small amount while at the same time she would have cut off one nephew and reduced the "natural" share of a niece by a very substantial sum. The fallacy with this type of argument is that it ignores the testamentary scheme considered in relation to the circumstances of all the parties known to the testatrix when she executed her will. Moreover, what becomes of these arguments when we realize that had either of the earlier wills become effective, the court would almost necessarily have found that the testatrix intended to exercise the power.
The Duane-Wilson defendants suggest numerous other reasons why they believe it is not clear that the testatrix intended to exercise the power. But I do not believe they throw substantial doubt upon the intent of the testatrix when she used the words "my estate" in the residuary clause of her will.
Considering the will along with the cumulative effect of the circumstances known to the testatrix at the time she executed the will and at the time she reaffirmed it in her codicil, I conclude that the testatrix clearly intended by the language "my estate" in her residuary clause to exercise the power of appointment reserved by her in the inter vivos trust.
The executor next seeks instructions as to whether or not it is entitled to apportion Federal Estate Taxes pursuant to the Delaware apportionment statute (or on general principles[1]) or whether Item XII of the will excludes the doctrine of apportionment.
By Item XII of her will the testatrix provided as follows:
"I authorize and direct that all inheritance, estate and other taxes which may be assessed against my estate or any part thereof or which may be charged to any of the beneficiaries under this Will shall be paid out of my Estate by the Executor of this will, it being my intent that all bequests and devises herein made shall be free of all such taxes."
As the then Chancellor indicated in Delaware Trust Company v. Blackstone, Del.Ch., 81 A.2d 126, the basic question is to ascertain what the testatrix intended by the language used. Certainly the specific bequests are tax free under the quoted language. In view of my holding that the inter vivos trust property passes under the will, and since there is therefore an identity of beneficiaries, the question of apportionment becomes academic.
Finally, the court is asked to determine whether Item IV of the will violates the rule against perpetuities. Item IV bequeaths the sum of $1,000 to Delaware Trust Company in trust to use the net income for cleaning and repairing tombstones, etc., in the family burial lots in Barratt's Chapel Cemetery. While none of the defendants has asked that the trust be declared void, nevertheless, I shall assume that the executor is entitled to instructions on this point.
Under the common law it was quite generally held that a trust of this character was not charitable and if it continued for an indefinite period was invalid as violating the rule against perpetuities. See 1 Scott on Trusts § 124.2. The Delaware statutes validating trusts of this type do not apply to devises or bequests in trust to non-cemetery corporations. See 12 Del.C. §§ 3551, 3552. However, the Superior Court of Delaware, three judges sitting, decided a case which involved, inter alia, a legacy to the "trustees of the Avenue M. E. Church of Milford, Delaware" in trust, the income therefrom to be applied for a certain private cemetery lot. In a per curiam opinion, *576 and without discussion, the court held that the legacy was valid. See Trustees of M. E. Church of Milford v. Williams, 6 Boyce 62, 96 A. 795. This case was decided in 1914. An examination of the statement of facts and the authorities cited by the attorneys in that case, as they are revealed by the reported opinion, suggests very strongly that the issue of the rule against perpetuities was not raised. However, it seems that the case apparently has been thought to be a general authority for the validity of such a trust. For example, it is cited in 2A. Bogert, Trusts and Trustees, § 377, footnote to page 151, as representing a view contrary to the common law rule of invalidity. Through its court records this court has actual knowledge of numerous testamentary trusts of this type which have been created since the date of the decision in the Williams case. It may perhaps be said that the Williams case is not binding either because the question of the application of the rule against perpetuities was not raised, or because it is unsound and should not be followed by this court. However, I feel that unless there is a strong public policy to the contrary this court should follow the Williams decision in its narrow scope because of the apparent reliance placed upon it by the Bar over a great many years in drawing wills. I find a general legislative policy reflected in our State, as well as in others to accord recognition to such trusts. See 12 Del.C. § 3551. However, the statutes do not apply to this precise situation but there would seem to be no substantial reason against it. I think that under all the circumstances it would be almost unconscionable to remove the foundation upon which so much worthwhile action has been premised.
I, therefore, conclude that the trust created under Item IV of the will is valid and the plaintiff executor is instructed to proceed accordingly.
Order on notice.
NOTES
[1] See Wilmington Trust Co. v. Copeland, Del.Sup., 94 A.2d 703.